CHESTER NEWMAN, Respondent, v. STANDARD ACCIDENT INSURANCE COMPANY, Appellant.

**Kansas City Court of Appeals, June 14, 1915.**

1. **ACCIDENT INSURANCE: Thumb and Finger: "At the Joint."** It was provided in an accident insurance policy that the insured should receive certain compensation for the loss of thumb and index finger of either hand, by severance at or above the joint connecting the thumb and finger with the body of the hand. It was held that "joint" meant the point of apposition or contact between the ends of the bones; and that an amputation through the bone. three-eights of an inch lower than such point, did not make a claim under the policy.

2. ————: ————: **Structures: Amputation.** Where an accident insurance policy provides compensation for a severance of a thumb or finger "at the joint," a severance of the structures holding together the bones and the bone on one side of the joint, is not a severance "at the joint."

3. **CONTRACT: Interpretation: Court: Evidence.** The interpretation or construction of a contract is for the court and should not be submitted to the jury.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

REVERSED AND REMANDED (*with directions*).

*Warner, Dean, McLeod & Langworthy* for appellant.

*Hogsett & Boyle* for respondent.

ELLISON, P. J.—Plaintiff held an accident policy of insurance issued to him by defendant in the principal sum of $7500. He was hunting rabbits and while getting through a wire fence his gun was discharged into his left hand, so that it became necessary to amputate the thumb and the next, or index, finger. The

policy contained the following provision: "For the loss of thumb and index finger of either hand by severance at or above metacarpophalangeal joints, one-third of the principal sum" of $7500. Other parts of the policy provided for weekly indemnity for loss of time arising from other character of injuries. Plaintiff's action is to recover one-third the principal sum under the clause quoted. Defendant denies that he has such right, but concedes a liability for weekly loss of time and offered to have judgment rendered therefor.

The joints named are those connecting the thumb and finger with the body of the hand. Whether the severance, or amputation, by the surgeon was at the joints, or below them, is the question in dispute. Plaintiff insists on the former and defendant on the latter.

The facts were these; the actual cutting, or severance, was through the bone of the thumb and finger two-eighths and three-eighths of an inch, respectively, below the articulation, or to express it differently, below the point where the ends of the bones in the body of the hand and in the thumb and finger come together. It was far enough below to leave two stubs of the thumb and finger bones plainly to be seen in the X-ray picture taken of his hand, and plainly showing two ends or heads of the bones jointed together, the articulation not disturbed in either the thumb or finger. The evidence also showed that plaintiff could move, or work these joints.

But it was shown by plaintiff that there are structures which enter into the formation of a joint; these being bone, cartilage, ligament, fibro cartilage, and synovial membrane. Some of these extend considerably above and below the point of articulation or contact of the ends of the two thumb bones and the two finger bones; and some of these are at the ends and some compose the covering of these ends of the bones. Plaintiff's position is that severing either of the ends

of these bones, though so far away from the point of articulation as to leave a stub three-eighths of an inch long, is severing the joint.

But it seems to us, that plaintiff confounds the "structures" below the point of articulation, which are necessary to sustain a joint, with the joint itself. This is shown by the first expert witness in his behalf, who stated that "A joint consists of the head of the bones entering into that joint, its cartilage, its ligaments and its synovial membrane." If the ends of two boards are joined, there is a joint. The boards may be held in place, that is, the joint may be sustained by nailing a board on either side, extending each side of the point of junction, say, for three feet. These side pieces hold the boards together and thereby sustain the joint, but no one would think of calling them the joint itself; and if a carpenter was ordered to take his knife or saw and sever the boards at the joint, it would not occur to him that he was complying with the order by cutting through the board at a point away from the junction and leaving the end of each board undisturbed. In severing the side boards (and one of the main boards) he would be severing the structure which held the ends of the two main boards in apposition, but he would not disturb the joint. The contract, in using the word "joint," fixed a place—a point of severance; it had no reference to the structures which must exist in order that a joint may be made. We do not mean to hold that for the severance to be "at the joint" within the meaning of the policy, that it must follow and coincide with the line of articulation, but only that it must be such as destroys the joint as a joint; that is, as an anatomical mechanism. That is to say, the joint must be dismembered.

In this view we are not subverting a rule which requires a liberal construction of insurance policies in

favor of the insured. In grading compensation to the character of injury, the company has a right to stipulate that the severance shall be at the exact point specifically stipulated, before the sum named for that character of injury, shall be due. And when thus plainly expressed, the courts must enforce them. Thus in Wiest v. U. S. H. & A. Ins. Co., 186 Mo. App. 22, 171 S. W. 570, (St. Louis Court of Appeals), the policy provided for insurance for the "loss of one hand . . . by severance at or above the wrist joints." The insured lost all of his hand except his little finger. "The thumb and three fingers were removed, together with a large portion of the palm;" but the little finger and a portion of the palm which supported it, were not removed; though the finger was permanently paralyzed. The Court held, through ALLEN, J., that no cause of action could exist "without proof of the actual physical severance" of the hand, "at or above the wrist joint." To the same effect is Stoner v. Yeoman of America, 160 Ill. App. 432.

And in Fuller v. Ins. Ass'n, 122 Mich. 548, the provision of the policy was that liability arose when there was an amputation of the whole hand or foot, and the insured had only one-third of his foot cut off by the surgeon. It was held that there was no cause of action, notwithstanding that the *entire* foot was rendered *useless;* the court saying that the insurance was not for loss of the whole foot, which might mean loss of *use* of the whole foot, but was for an injury which shall cause an *amputation* of the whole foot. The latter being the plain contract of the parties, the court could not substitute another.

In Mady v. Switchmens' Union, 116 Minn. 147, the insurance provision, though awkwardly expressed, covered a loss by physical separation "of four fingers of one hand, at or above the third joint; or of three fingers and thumb of one hand at or above the third

joint." The insured's hand was crushed, resulting in the amputation of the second, third and fourth fingers, above the third joint. The bone in the palm of the hand connecting with the remaining finger was injured, and an inch and a half of it was removed which resulted, in great part, in destroying the use of that finger. But, for the reason that it remained on the hand, the court held that four fingers had not been amputated and no liability accrued under the plain terms of the contract.

In Brotherhood of Trainmen v. Walsch, 103 N. E. Rep. 759 (S. C. Ohio October, 1913) the insurance became effective when the insured "shall suffer the amputation or severance of an entire hand at or above the wrist joint." The insured had his entire hand so crushed that it became useless, but only the thumb was amputated. It was held that there was no cause of action under the provision quoted.

Plaintiff offered evidence of surgeons, as experts, to prove the anatomical, or scientific meaning of the word "joint" as applied to the finger, and that the amputation below the place of articulation was at the joint. Defendant objected to such evidence on the ground that the interpretation of the contract was for the court, that there was no ambiguiy in its terms and that the construction of the contract was addressed to the court. These objections were overruled. We think they should have been sustained. There was no ambiguity in the contract and it was for the court, not the jury, to say what it meant. [Bolt & Nut Co. v. Caldwell, 240 Mo. 358; Brannock v. Elmore, 114 Mo. 55, 64; Rogers v. Modern Brotherhood, 131 Mo. App. 353; Gerhart v. St. Ry. Co., 132 Mo. App. 546, 549; Wilmarth v. Ins. Co., 168 Cal. 536, 546; Fuller v. Ins. Co., 70 Conn. 647, 677.] In the first of these cases the Supreme Court said, "The problem in this case is not to declare the delicate graduation of meaning which the

term 'require' takes when expanded as a synonym, but to ascertain its natural import and accepted meaning in the particular sentence of the contract under review. To do 'this, the law does not investigate the meaning of words in the abstract but deals only with the concrete meaning in concrete contracts of the words used. All other inquiries are linguistic, not legal quests. To serve its own purpose, the law puts itself in the shoes of the contracting parties and ascertains the natural and accepted sense of the words used in their agreement viewed in the lights of the objects had in view and the circumstances surrounding the actors." The word "joint" like most others, may have more than one meaning; depending, of course, on the connection. It may mean a place where intoxicating liquor is illegally sold; and, when ordering a joint of beef for the table, it would mean a portion of the leg of the animal. But if the butcher were directed to sever the leg at the joint, he would not cut into the leg above or below that place, without dismembering the joint.

Plaintiff takes the position that if the evidence be conceded to be improper, defendant condoned the ruling by offering an instruction submitting that as an issue to the jury. When evidence is admitted over the protest of a party, he may offer instructions on the issue thus forced upon him, without waiving his exception to such issue being put into the case. The same remark will apply to the instructions. An instruction was given by the court for plaintiff submitting that issue to the jury and one on the same subject, was asked by defendant and given. There is ardent dispute between counsel as to which of these was given first in point of time. This particular phase of the matter is of no consequence, since the record shows that that issue was forced into the case over defendant's objection and exception. [Everhart v. Bryson, 244 Mo. 507, 516.]

The judgment is reversed and cause remanded with directions to enter judgment for the plaintiff for the sum offered by defendant. All concur.