David Jones, Appellant, v. Continental Casualty Company, Appellee.

INSURANCE: Severance "at" Ankle Defined. A policy which provides indemnity *"for loss of either foot,"* but defines *"loss"* to mean, *"complete severance at or above the * * * ankle,"* is, in view of the manifest purpose of the policy, and in view of the varied meanings of the words *"ankle"* and *"at,"* reasonably susceptible of two constructions, to wit:

1. That the severance must be at the precise point of articulation of the leg and foot; or

2. That the severance must be *near* to said point of articulation—so near as to practically destroy the use of the foot.

It follows that the insured is entitled to the benefit of the latter construction.

*Appeal from Lee District Court.*—W. S. HAMILTON, Judge.

SEPTEMBER 29, 1920.

ACTION at law to recover upon an accident insurance policy. Trial to a jury. At the close of plaintiff's evidence, the trial court sustained defendant's motion for a directed verdict in its favor. Plaintiff appeals.—*Reversed.*

*E. C. Weber,* for appellant.

*Geo. R. Sanderson, J. M. C. Hamilton, Manton Maverick,* and *M. P. Cornelius,* for appellee.

PRESTON, J.—Plaintiff's foot was accidentally crushed under a car wheel. He had an accident policy in defendant company. Amputation was necessary, and the severance was at the point indicated by the line in the cut here shown.

By the policy, defendant promised to pay plaintiff "in-

demnity for loss of life, limb, sight, or time, resulting from a personal bodily injury, all in the manner and to the extent hereinafter provided. * . * * For loss of either foot, the principal sum of $1,000." A later provision in the policy reads:

" 'Loss,' above used, with reference to hand or foot, means complete severance at or above the wrist or ankle." ·

The petition is in two counts. In the first, plaintiff claimed that he received an injury to his foot, to the extent that amputation was necessary, and that he lost the use of his foot. In the second count, he claimed that he received an injury to his foot, and that it was amputated and severed at the ankle, and that he lost the use of said foot. He asks judgment on both counts, in the total sum of $1,000. The answer is in general denial.

Plaintiff testified that he could bear his weight on this leg, but cannot use it; that it gets weak, and turns over; that he cannot get around without a crutch, except a few steps. The surgeon who made the amputation testified that the operation is what is called the Forbes operation.

"That means the line of separation between the cuneiform and scaphoid, and through the cuboid. Cuboid bone was severed. The scaphoid is located back towards the heel, and the cuneiform bones are in front, or toward the toes. There are three cuneiform bones. · The bones right above the line, and on the side of the great toe where it was amputated, is the scaphoid, and the cuboid is on the side of the little toe. Half of that remains, and half was removed. The tarsus bones are all the bones of the foot back of the metatarsus, and contains what is known as the talus, or astragalus, the talus or astragalus being known as one of the tarsal bones. The amputation of Mr. Jones' foot was probably an inch from the talus or astragalus. In my opinion, for the purpose of having an artificial foot for Mr. Jones, it would have been better if the amputation would have been made above what is commonly known as the ankle joint. Because of the amputation as made, the function of

the foot has been diminished.   The amputation of the foot has changed the relation of the bones.   One half of the arch is removed, and the portion of the arch remaining must tip a little, so the heel hits back a little, as he puts his weight on it.   In my opinion, he could walk without a crutch or cane.   The calcaneum, or the os calcis, is one of the tarsal bones, and the astragalus rests upon it.   Articulation of the astragalus with the leg bone is what forms the ankle joint.

"Q.   If there is a tipping back and forth of the heel bone, would it not affect the astragalus?   A.   The weight of the body might fall on a slightly different surface.   Q.   That would not be the natural condition of the astragalus?   A. No, sir.

"The cuboid attaches to the os calcis and the forepart of the two small metatarsals; the astragalus, os calcis, scaphoid, cuneiform, and cuboid bones are known as the tarsal bones.   The foot consists of 26 bones; 7 in the tarsus, called the astragalus, the os calcis, the scaphoid, the cuboid, and 3 cuneiform bones, and there are 5 metatarsals and 14 phalanges."

The motion to direct a verdict was on these grounds:
"(1)   Because the plaintiff's petition states no cause of action.

"(2)   Because the plaintiff has failed to prove facts entitling him to recover in this action.

"(3)   Because the policy of insurance upon which plaintiff brings this action contains the provision that ' "Loss," as above used, with reference to hand or foot, means complete severance at or above the wrist or ankle.'   And the plaintiff has failed to allege or prove a complete severance of his foot at or above the ankle.

"(4)   Because the evidence shows that the severance or amputation was made below the ankle.

"(5)   Because the evidence shows that a substantial portion of plaintiff's left foot still remains attached to plaintiff's body."

1.   It may be conceded at the outset that the provision

in the policy in question is valid, and that the court will not make a contract for the parties, and further, that, if the language employed is plain and unambiguous, the language used will be given force. A strained or unreasonable construction of the language used, where there is no real ambiguity, should not be indulged in. On the other hand, it is conceded by counsel for either party that, if the policy is reasonably susceptible of two constructions, and there is doubt as to the meaning, and therefore an ambiguity, the same is to be construed strictly against the company. These propositions are so well settled that we shall not enter into any extended discussion of the cases, but simply cite some of them. On the several propositions before set out, appellee cites the following: *Mitchell v. German Coml. Acc. Co.*, 179 Mo. App. 1 (161 S. W. 362); *McKinney v. General Acc. F. & L. A. Co.*, 211 Fed. 951; *Blume v. Pittsburgh Life & Trust Co.*, 183 Ill. App. 295; *Church Co. v. Aetna Indemnity Co.*, 13 Ga. App. 826; *Lesher v. United States Fid. & Guar. Co.*, 239 Ill. 502; *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452; *Standard Life & Acc. Ins. Co. v. McNulty*, 157 Fed. 224; *Delaware Ins. Co. v. Greer*, 120 Fed. 916; *Perry v. Provident Life Ins. & Inv. Co.*, 99 Mass. 162; *Perry v. Standard Life & Acc. Ins. Co.*, 59 Tex. Civ. App. 50 (125 S. W. 374); *Continental Cas. Co. v. Ogburn*, 175 Ala. 357 (57 So. 852); *Continental Cas. Co. v. Wade*, 101 Tex. 102 (105 S. W. 35); *Hall v. Hardaker*, 61 Fla. 267, 275; *Southern Home Ins. Co. v. Putnal*, 57 Fla. 199, 223; *Tigg v. Register Life & Ann. Ins. Co.*, 152 Iowa 720, 723; *Currie v. Continental Cas. Co.*, 147 Iowa 281; *Peterson v. Modern Brotherhood*, 125 Iowa 562.

It may be conceded, too, that the language used in the policy is a part of the promise, and that, to authorize a recovery, the loss must fall within the promise.

2. It is further contended by appellee that, where a policy of accident insurance promises payment for the loss of either foot by complete severance at or above the ankle, there can be no recovery for loss of a foot where it appears, from the undisputed evidence, that a substantial portion of

the foot remains. On this proposition, they cite *Wiest v. United States Health & Acc. Ins. Co.*, 186 Mo. App. 22 (171 S. W. 570) ; *Brotherhood of R. Trainmen v. Walsh*, 89 Ohio St. 15 (103 N. E. 759) ; *Continental Cas. Co. v. Bows*, 72 Fla. 17 (72 So. 278) ; *Hardin v. Continental Cas. Co.*, (Tex. Civ. App.) 195 S. W. 653 ; *Peterson v. Modern Brotherhood*, 125 Iowa 562 ; *Bigham v. Clubb*, 42 Tex. Civ. App. 312 (95 S. W. 675). Also, the following cases, to the same point, and to the further point that, under such circumstances, there is no occasion for the application of the doctrine of strict construction. *Mady v. Switchmen's Union*, 116 Minn. 147 (133 N. W. 472) ; *Stoner v. Yeomen*, 160 Ill. App. 432 ; *Newman v. Standard Acc. Ins. Co.*, 192 Mo. App. 159 (177 S. W. 803) ; *Metropolitan Cas. Ins. Co. v. Shelby*, 116 Miss. 278 (76 So. 839).

We may say, in passing, that it is possible, and some of the cases hold, that there may be a loss of a foot without any severance, that is, the loss of the use of the foot. But it may be conceded that, under the policy in the instant case, there must have been a severance. There was a severance. Under the terms of the policy, such severance must have been at or above the ankle. We shall spend no time in discussing the question as to whether the severance in this case was above the ankle, because it is not necessary that there should be such severance, in order to authorize a recovery. If there was a loss of the foot by a severance at the ankle, it is sufficient. Whether the severance was at the ankle, we shall consider later. It should be borne in mind, however, that the promise in this policy is to pay for the loss of a foot; and the later provision in the policy defines, or attempts to define, the meaning of such term.

We shall notice some of appellee's cited cases, and those most strongly relied upon to sustain its contention. In the *Wiest* case, supra, the policy provided for the payment of the principal sum for the loss of one hand, which was stipulated to mean loss by severance at or above the wrist joint. The plaintiff's injury necessitated amputation of the thumb and first three fingers, and a large portion of the palm,

leaving only the little finger and a part of the palm supporting it. The little finger and the portion of the palm remaining were permanently paralyzed, and of no use or service. Plaintiff lost the entire use of his hand, as completely as if it had been severed at the wrist joint. The question was whether plaintiff, having suffered the total loss of the use of the hand, was entitled to recover, without proof of the actual, physical severance thereof, at or above the wrist joint. The court said, in part:

"But here the policy provides that the loss of a hand shall mean loss by *severance at or above the wrist joint.* Not only is it provided that the loss of such member shall be by physical severance thereof, but the extent of such loss is made exact and definite by locating the precise point at or above which such severance shall take place. * * * In the instant case, had the provision of the policy agreeing to indemnify plaintiff in the amount of the principal sum of the policy for the 'loss of one hand' stood entirely alone, and unaffected by any other provision thereof, beyond doubt plaintiff would have been entitled to recover, having lost the entire use of his hand. However, the very next paragraph of the policy provides, in unmistakable terms, what shall be meant by the 'loss of one hand,' to wit, the loss thereof by severance at or above the wrist joint. Plaintiff has not suffered a loss of his hand by severance at or above the wrist joint; and if effect is to be given to the last-mentioned provision, plaintiff's case must fail. If any ambiguity or uncertainty of meaning could be said to inhere in the pertinent provisions of the policy, it would readily be resolved in favor of the insured, and against the insurer. Such is the well-established and wholesome doctrine with respect to the construction of insurance contracts. * * * If it appeared that the portions of the policy under consideration, when read and construed together, were at all ambiguous or of doubtful import, we should not hesitate in the least to 'blandly' resolve such ambiguity or doubt in favor of the insured. Indeed, the policy should, if possible, be construed so as to effectuate the insurance, and not to

defeat it; for the indemnity is the very object and purpose of the contract, for which the insured has paid a consideration.  See *Stix v. Travelers Indemnity Co.*, 175 Mo. App. 171 (157 S. W. 870).  But it appears that the defendant has chosen apt language to indicate that it does not agree to indemnify the insured for the loss of a hand, unless such loss shall consist in the actual physical severance of the hand at or above the wrist joint.  It is by no means likely that the policyholder so understood, or that he would knowingly have accepted the policy with such restrictive limitations upon his right to recover the indemnity for the loss of a hand or foot; but we can find the intention of the parties only from the language employed in the contract, having regard to the rules of interpretation which may be applied to contracts of this character.  We cannot 'blandly' construe the troublesome provision out of the contract, and disregard it altogether; for however great may be our inclination or duty to protect a policyholder against intricate or obscure technical provisions, designed for the avoidance of liability on the part of the insurer, we cannot make a contract for the parties.  The stipulation in question, as we have said, follows immediately that portion of the policy providing for specific losses, in the same type in which the body of the policy is printed.  Its meaning appears to be plain and unmistakable.  It pointedly defines what shall constitute the 'loss of a hand.' "

It will be noticed that, in that case, the severance was to be at the joint.  This, we think, fixes the point more definitely than would have been the case if it had been omitted.  It should be said, however, that some, though not all, the definitions of ankle say it is the joint connecting the foot and the leg.  This feature will be taken up later in the opinion.  Though the court in that case blandly, or perhaps strictly, speaking, positively states that the policy fixes the severance at the precise point at or above which the severance shall take place, we have grave doubt whether the use of the words "at the ankle" does fix an exact, definite, or precise point.  It will be observed that, in the

*Wiest* case, the question of the meaning of the word "at," and whether it does fix a precise point, is not discussed, but only asserted. A careful reading of that case shows, we think, that the court was interpreting the contract more especially with reference to the question whether there was a loss of the hand without a severance, as distinguished from a loss with a severance.

In *Brotherhood of R. Trainmen v. Walsh,* supra, the provision of the policy was for the severance of an entire hand at or above the wrist joint, etc. Plaintiff's thumb was amputated, but the rest of the hand was so crushed and mangled that he was permanently disabled from using the hand to perform any manual service. Construing the pleadings in that case, the court held that no severance was alleged; and that there was no amputation or severance of an entire hand at or above the wrist joint; and that there was no ambiguity. The language of the policy in that case is more precise and definite than in the case at bar, in that the words "entire" and "joint" are used.

In the *Bows* case, supra, a case against this defendant, and under a policy like the one now in controversy, where the policy provided for the loss of either hand by complete severance, at or above the wrist, it was shown that the ends of the metacarpal bones were disjointed and separated, or, in a sense, severed from the carpals. This left the thumb sticking out so far that there was no place to get the muscles of the thumb attached to anything; and one bone of the wrist was removed, so that the thumb could be set farther back, to bring the muscles down, and thus get an attachment for the muscles, and give him some use for the thumb. The court, discussing the question whether there was a complete severance of plaintiff's hand at or above the wrist, held that there was not such a severance, and denied a recovery. The question was whether there had been a severance, within the meaning of the policy. The opinion in that case cites the *Wiest, Walsh,* and other cases cited by appellee.

The *Hardin* case, supra, was on a policy issued by this

defendant, where the claim was for the loss of a hand by complete severance at or above the wrist. It was shown by the evidence that:

"The appellant's hand was amputated, so that all the phalanges or finger bones were gone, except the proximal one half of the first phalanx of the thumb; all of the fifth metacarpal bone is gone; all of the second, third, and fourth metacarpal bones are gone, except the proximal heads of same; and that there remain of the hand the proximal heads of the second, third, and fourth metacarpals, the proximal half of the first phalanx of the thumb, all of the first metacarpal, and all of the rest of the bones of the hand. It was agreed upon the trial of the case between the parties that the human hand is composed of: scaphoid, semilunar, cuneiform, pisiform, trapezium, trapezoides, os magnum, and the unciform bones and five metacarpal bones and fourteen phalanges."

The trial court found, as a fact, from the evidence, that plaintiff's hand was not completely severed at the wrist, in contemplation of the provision of the policy. The appellate court held that the finding had sufficient support in the evidence, and that the evidence shows that not all of the hand was severed, and that it does not show that the entire hand was severed at the wrist. The court interpolated the word "entire," which is not in the policy. There was no discussion of the meaning of the word "at."

*Fuller v. Locomotive Eng. M. L. & A. Assn.*, 122 Mich. 548 (48 L. R. A. 86), is cited in the *Bows* case, and by appellee herein. In that case, it was held substantially that the amputation of a person's foot, so as to leave all of the heel and substantially all of the hollow of a foot, and a part of the ball, does not give a right to the full amount of the insurance, on the ground that the full use of the foot is lost, under a by-law of the association which provides for full payment in case of "amputation of a limb (whole hand or foot);" as the word "whole" applies to the foot, as well as to the hand, and the injury insured against is not the loss of the use of a hand or foot, but the amputation of a

limb, that should include a whole hand or whole foot. More of the foot remained there than in the instant case. The pivotal point in that case was whether the language used should be construed to mean a whole foot, as well as a whole hand.

The foregoing cases are more nearly in point than some of the others cited; but for the reasons indicated, they are not quite "gray horses" or "spotted mules" with the case at bar. The other cases will be referred to more briefly.

In the *Mady* case, the question was whether there was a total disability, under a policy providing for a physical separation of the loss of four fingers of one hand, at or above the third joint, and so on, where, after the amputation, the entire first finger and the thumb remained attached to and a part of the hand. It was held that the evidence showed a loss of but approximately 50 per cent in the usefulness of the index finger, and he was allowed only a part of the recovery, instead of as for total disability.

In the *Stoner* case, where it was provided for the loss of a hand by severance at or above the wrist, it was held that the loss of the use was not sufficient to establish liability.

The *Bigham* case arose out of an election contest. The statute exempted those from payment of poll tax who have lost a hand or foot. The evidence showed that the party had lost three fingers and part of the forefinger, but had not lost the palm and thumb. The court said that the loss of the members is what constitutes the exemption, and not the maiming of them; that a man may lose the use of a limb, and not lose the limb.

In the *Newman* case, the court said that the point of severance is stipulated in the contract, and must be enforced as made. The stipulation was for the loss of the thumb and index finger by severance at or above the metacarpophalangeal joints.

In the *Shelby* case, the loss of the use of a hand was not within the provision of the policy providing for severance at or above the wrist, since severance means the re-

moval of anything, the act of severing, dividing, or separating, etc.

' Counsel for appellee concede that there are no cases in Iowa which are directly applicable, but they cite and rely upon, as they say the trial court did in part, the *Peterson* case, supra, where a recovery was sought for the breaking of a leg, which was defined to be the breaking of the shaft, and so on. It was held that the breaking of the extremity of the bone was not a breaking of the shaft. The case turned largely on the definition of the term "shaft," and it was held that there was no ambiguity, or occasion for strict construction. Two members of the court dissented; and some members of the court as at present constituted are inclined to agree with the dissent. Some of the other cases cited are upon the proposition as to whether there is an ambiguity, and we shall not review them further. There seems to be little, if any, dispute between counsel as to the rule. But the question is more whether the language in a particular case is plain or ambiguous.

Appellant's propositions and the cases cited to support them are:

The policy of insurance should be most favorably construed in favor of the plaintiff. *Meyer v. Fidelity & Cas. Co.*, 96 Iowa 378; *Kirkpatrick v. Aetna Life Ins. Co.*, 141 Iowa 74; *Simpkins v. Hawkeye C. M. Assn.*, 148 Iowa 543, 551. See, also, 14 Ruling Case Law 926. The insurance policy is to be interpreted according to its character and purpose, and in the sense in which the insured had reason to suppose it was understood. *Sneck v. Travelers' Ins. Co.* 88 Hun 94 (34 N. Y. Supp. 545); *Lord v. American Mut. Acc. Assn.*, 89 Wis. 19 (61 N. W. 293, 26 L. R. A. 741). See, also, 14 Ruling Case Law 925 *et seq.* The preposition "at" primarily signifies near to, or co-extensive with. 5 Corpus Juris 1422 to 1431; 1 Words & Phrases 594. "At a point" should be construed as equivalent to "at or near the point." 5 Corpus Juris 1435. They say further that severance at or above the ankle should be construed in the ordinary and fair meaning of the words used, and not in an

anatomical or technical sense (*Sheanon v. Pacific Mut. Life Ins. Co.*, 77 Wis. 618 [9 L. R. A. 685], 1 Corpus Juris 417) ; and that the provision in question is reasonably susceptible to two constructions, and that the one most favorable to the insured should be adopted. *Peterson v. Modern Brotherhood*, 125 Iowa 562; *Young v. Travelers Ins. Co.*, 80 Me. 244 (13 Atl. 896). And finally they contend that it was a question for the jury to determine whether or not plaintiff had lost the use of his foot, and whether the amputation or severance was at or above the ankle. *Moore v. Aetna Life Ins. Co.*, (Ore.) L. R. A. 1915 D, 264; 1 Corpus Juris 467; *Beber v. Brotherhood of R. Trainmen*, 75 Neb. 183 (106 N. W. 168) ; *Sheanon v. Pacific Mut. L. Ins. Co.*, 77 Wis. 618 (46 N. W. 799, 9 L. R. A. 685). See, also, *Lord v. American Mut. Acc. Assn.*, supra.

In the *Lord* case, however, the policy did not provide for amputation or severance, but it was argued by the company that such was the meaning of the words used. The *Moore* case is as nearly in point for appellant's contention, perhaps more nearly so, than the cases cited by appellee are for its contention. The *Moore* case refers to some of the cases cited by appellee herein. The court divides the cases into three classes, and holds that the *Moore* case does not come within any of the three. In that case, the provision of the policy was for the loss of a hand by removal at or above the wrist. The bones of the hand were removed at the wrist, except the thumb, and, as we understand it, some of the wrist bones; enough of the flesh of the hand was left to cover the bones of the wrist in hardened callous, but no more than good surgery would require for protection of the bones of the wrist. The court said that substantially nothing remains of plaintiff's hand but a worse than useless fragment. The court held that the language used was reasonably susceptible of two interpretations, and that the doubt should be resolved in favor of the insured. The court said, further:

"Let us consider the relations of the parties, and the object which plaintiff had in view when he took out this

policy. He had a good hand, against losing the use of which he desired to insure. If he had been told the intent and meaning of the policy was such that if, in case of a necessary amputation, the surgeon should leave some useless shred of his hand, to be a source of annoyance and inconvenience, and thereby his policy would be practically worthless, does any sane person believe for a moment he would have taken out the policy? The substance of what he sought was insurance against the possible loss of his hand, as a useful member of his body. Substantially, he has lost his hand, by removal at the wrist. In view of all the decisions, it is apparent that the words 'by removal at or above the wrist' were introduced as a safeguard against possible fraud, and to prevent a recovery in cases where there had been no substantial removal of the injured member; but here, the hand, as a hand, is gone. Practically, the plaintiff has no hand."

The court refers to the *Sneck* case, as sustaining its conclusions. In the *Sneck* case, the provision was against loss by severance of one entire hand. The court quotes from the *Sneck* case as follows:

"To require the insured to submit to a strictly literal interpretation of the contract prepared for him by the insurer, without regard to the purpose of the contract or the understanding thereof by the parties, would be to hold that only in case of the severance of the entire hand in a most accurately anatomical or technical sense, could the insured recover, under the clause of the policy. We do not believe that such a conclusion is required in the present case. The term 'entire hand' is to be taken in its general acceptation and ordinary meaning. In construing this contract the law does not require an injury which comes within a strictly accurate and technical definition of the words employed, but one which reasonably, fairly, and practically comes within the meaning of the terms employed, in their general and usual meaning and acceptation. In a contract of insurance providing for indemnity for the loss of a limb, the compensation to be paid is not

merely for the physical pain of its amputation, but principally for the deprivation of its use as a member of the body. It would seem to be an extremely narrow and technical construction of this contract to say that only a physical removal of every particle of that portion of the human anatomy known as the hand, would entitle the insured to recover under the clause of the policy now under consideration. Is it not more reasonable and logical to conclude that, in the use of the language above referred to, the 'entire hand,' as a part of the human structure, is considered in connection with the use to which it is adapted, and the injury which the loss of such use would entail? Is it not also fair to assume that this was regarded by the parties as the sense in which the contract was to be understood, and was one of the considerations which influenced the insured to enter into the contract?"

We think the Oregon case is the better authority, and we are inclined to follow it. The *Sheanon* case is not so nearly in point. The provision there provided indemnity for the loss of two entire feet. The court held that the loss of the use of the feet authorized a recovery though there was no amputation.

There is another consideration, however, which appears to us worthy of consideration, and which seems not to have been considered in any of the cases; and that is the construction of the word "at," in the term "at or above the ankle," and what constitutes the ankle. One definition of ankle is: "The joint which connects the foot with the leg; the tarsus." Webster's Dictionary. Another: "Tarsus, the ankle; the bones or cartilages of the part of the foot between the metatarsus and the leg, consisting, in man, of seven short bones." Webster's Dictionary; Elements of Physiology, by R. T. Brown, M. D. Another: "The bones of the tarsus, or the ankle, are seven in number." Encyc. Brittannica, Vol. 1, page 830 (9th Ed.). Another: "The ankle joint is formed by the tibia and fibula above, and the astragalus below." New International Encyc., Vol. 8, pages 783, 784. "The joint which connects the foot with

the leg; by extension, the slender part of the leg, between
the calf and the ankle joint." 8 New International Encyc.
"The joint connecting the foot and the leg; also, the promi-
nence on either side of it. 2. The part of the leg near the
ankle joint." Standard Dictionary. "The joint by which
the foot is united to the leg." American Encyclopaedic Dic-
tionary, Vol. 1.,

"The ankle is the joint which connects the foot with
the leg; the slender part of the leg between the joint and
the calf." New Eng. Dictionary (Murray, Oxford).

"The ankle is a perfect ginglymus, or hinged joint. The
bones which enter into its formation are: The lower ex-
tremity and interval malleolus of the tibia and the external
malleolus of the fibula above; and the upper and lateral
articular surfaces of the astragalus below." Human An-
atomy, Morris (B. Blakiston's Son & Co.) 266 (1898).

"Foot: (1) The extremity of the leg below the ankle;
the part of the leg which treads on the ground in standing
or walking, and on which the body is supported. (2) The
foot consists of many bones, viz., seven bones of the tarsus
(q.v.), five metatarsal bones, and the phalanges of the toes.
Essentially, they are homologous with those of the hand."
2 American Encyclopaedic Dictionary 1; Hand Atlas of
Human Anatomy, Spalteholz, 147, 151.

"Foot: The segment of the limb of a vertebrate animal
upon which the body rests in standing; the part below the
ankle (pes) in man, or below the ankle or wrist (manus
or pes) in other vertebrates. The human foot consists of
three parts; the ankle, or tarsus; the instep, or metatarsus;
and the toes, or phalanges." Standard Dictionary, Twen-
tieth Century Edition.

These definitions of ankle differ. Some give it as the
lower part of the leg. If this is accurate, why may it not
be said to be the upper part of the foot? Some of the
definitions say it is the joint. The joint, perhaps, would
be more definite than the ankle; but even "joint" does not
necessarily mean the exact point of articulation. Other
definitions say it is the tarsus, or that part of the foot

between the metatarsus and the leg, consisting of seven short bones. It was some of these seven bones that were severed, or divided, in plaintiff's foot. Can it be said that any of these definitions fix a definite or precise point or place, when used in connection with the words "severance at the ankle?" It is very clear to us that none of them do so. Under these definitions, what is the ankle? What do the words "at the ankle" mean? Can it reasonably be said that it is plain, that there is no doubt or ambiguity as to the precise point where the severance must be, so that the language used is not susceptible of two constructions? Clearly not. The language could have been made more precise and specific. For instance, it could have provided that the severance should be at the articulation of the lower end of the leg bones, and the bone or bones upon which they rest, or could have used some such language. The use of the words "at or above" indicates quite clearly that no definite or precise point of severance was fixed. It could be at or above. From some of the definitions, the bones that are severed are a part of the ankle. If such bones at the point of severance are a part of the ankle, then clearly the severance was at the ankle. If the bones severed are a part of the ankle, they are *in* the ankle, and if in the ankle, it is, of course, at the ankle. Furthermore, we find that the word "at" is a preposition of extremely various use. Being less restricted as to relative positions, it may, in different constructions, assume their office, and so become equivalent to "in," according to the context, or "in or near," "near," "close to," etc. 5 Corpus Juris 1420, 1422.

We do not hesitate to say that, since the bones severed and the point of severance were a part of the ankle, the severance was at the ankle. Plaintiff was insured against the loss of his foot. He did lose his foot, by severance, and the severance was at the ankle. As has been said, the use of the words "at or above" negatived the thought of a precise point, and we find that the use of the word "at" usually negatives the idea that precision or an exact coin-

cidence is intended, either of place or time. It is a word of great relativity and elasticity of meaning, and is somewhat indefinite, shaping itself easily to varying contexts and circumstances. It is not a word of precise and accurate meaning, or of clean, clear-cut definition, and it has been said that the connection furnishes the best definition. The word is not definitely locative, when applied to the place or location of an object, and so used is less definite than "in" or "on," having a much wider signification, and it may include all that "in" would include, and less than "in and near." Its primary idea, as applied to place, is "nearness," and it is commonly used as the equivalent of "near." 5 Corpus Juris 1422 to 1427. See, also, *Old Ladies Home v. Hoffman*, 117 Iowa 716.

Of course, the word may, under some circumstances, indicate a definite point of time or place.

We reach the conclusion that, under the evidence, plaintiff lost his foot and the use of it by severance at the ankle; at least, it was a question for the jury. We hold that the words used as indicating the point of severance are, at the most, ambiguous, and that, to carry out the purposes intended, that is, to pay indemnity for the loss of plaintiff's foot, it could properly be found that the severance was at the ankle. It follows that the court erred in directing a verdict for the defendant. The judgment is reversed, and the cause remanded.—*Reversed and remanded.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.