Bail 52—$20,000 bail for woman charged with killing husband held excessive and fixed at $7,500, where she had no property except mortgaged home.

Where bail of woman charged with killing husband was fixed at $20,000, and she had no property save home, reasonable value of which was $3,500, which was incumbered by mortgage of $2,750, and no family save 19 year old son, bail was excessive and fixed at $7,500.

Appeal from District Court, Bastrop County; J. B. Price, Judge.

Habeas corpus by Rosa Waybourne. From a judgment fixing her bail at $20,000, she appeals. Reversed, and bail granted in sum of $7,500.

Harris & Harris, of Austin, for appellant.
A. A. Dawson, State's Atty., of Austin, for the State.

LATTIMORE, J. This is an appeal from a judgment of the district court of Bastrop county fixing appellant's bail at $20,000.

This appellant was given an examining trial before a magistrate in Bastrop county upon a charge of killing her husband. She was remanded to the custody of the sheriff, and her bond fixed at $20,000. Thereafter she sued out a writ of habeas corpus before the honorable district judge of said county, and, upon a hearing, showed that she was so charged, and that she had no property save a home in Smithville, Tex., of the reasonable value of $3,500, which was incumbered by a mortgage of $2,750; that she had no other property of any kind, had no family save one son 19 years old, and no friends of sufficient ability to make a bond in the amount referred to. She has been confined in the county jail from April, 1928, to this date in default of said bond. She said it was utterly impossible for her to make bond in this amount, but that she believed she might make bond in the sum of $5,000. In this she is supported by her son.

In the judgment of both the magistrate who heard the examining trial, and the district court who heard this application when originally presented, this is a bailable case. The statement of facts heard by the district judge is before us. We see nothing in it justifying the fixing of bond for this unfortunate woman in the amount of $20,000. In her case it would seem tantamount to a denial of bail. In the absence of some facts making plain to us the proposition that the case against this appellant is one likely to result in a death penalty, we have concluded not only that bail should be granted, but that it should be fixed in a reasonable sum. If the case appeared one clearly of murder and the facts stated were such as to give rise to a reasonable belief that a heavy penalty would be inflicted, we would not question the amount fixed, but, in the absence of any such facts, we deem the bond as fixed too large.

The judgment of the district court fixing bond at $20,000 is reversed, and bail is granted in the sum of $7,500.

## COVINGTON et al. v. SEXTET LOCAL MUT. AID ASS'N et al.    (No. 11948.)

Court of Civil Appeals of Texas. Fort Worth. April 7, 1928.

Rehearing Denied Both Parties May 12, 1928.

1. Insurance 146(3)—Doubtful provisions of policy must be construed most strongly in favor of insured.

The general rule of construction of insurance policies is that provisions of doubtful meaning must be construed most strongly in favor of the insured.

2. Insurance 527—Total destruction of sight of one eye held to entitle insured to recover under policy, notwithstanding provision requiring removal of eyeball was not complied with.

Under mutual insurance policy, providing for payment of certain sum for loss of one eye by removal of eyeball from body, held, that insured, the sight of one of whose eyes was totally destroyed, was entitled to recover, notwithstanding eyeball was not removed from body.

3. Insurance 192(1)—Whether officers of mutual insurance association are partners is immaterial, where benefits were paid by assessments against members.

Where mutual insurance policy provided for payment of benefits by assessments against members of association, it was immaterial whether officers be held liable as partners or

not, since nothing more could be collected than what may be collected from the assessments.

**4. Insurance** ⚖⇒602—One suing on policy of mutual benefit association and by-laws made part thereof held not entitled to recover statutory penalty for failure to pay claim.

Even though statute providing for penalty for failure of insurer to pay indemnity sued for after proof was duly made applies to mutual insurance association, insured was not entitled to recover such penalty, where suit is based on contract of insurance and by-laws of association expressly made part thereof.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by Mrs. Effie Covington and husband against the Sextet Local Mutual Aid Association and others. From a judgment denying a recovery, plaintiffs appeal. Reversed, and judgment rendered in favor of plaintiffs.

Patterson & Cates, of Decatur, for appellants.

W. C. Shults and H. E. Lobdell, both of Decatur, for appellees.

DUNKLIN, J. Mrs. Effie Covington, joined by her husband, instituted this suit against the Sextet Local Mutual Aid Association of Decatur, Tex., an unincorporated mutual aid association, and against J. C. C. Gunn, its president, James W. Smith, treasurer, and E. B. Clark, secretary, who were sued as partners doing business under the name of the association, to recover the sum of $750, for the loss of the sight of one eye, claimed to be due under and by virtue of an insurance policy issued to Mrs. Covington by the association. The case was tried before the court without the aid of a jury, and from a judgment denying plaintiff a recovery she has prosecuted this appeal.

The by-laws of the association show that the benefits to be received by a member of the association would be raised by assessments levied by its secretary against its members. The amount to be paid by each member of the association was as follows:

"(a) One dollar and ten cents ($1.10) upon the death of any member in this association. (b) One dollar and ten cents ($1.10), should any member in this association lose both eyes by removal of the eyeballs from the body, both hands by severance or amputation at or above the wrist, both feet by severance or amputation at or above the ankle. (c) Fifty-five cents (55 cents), should any member in this association lose one eye by removal of the eyeball from the body, or one hand by severance or amputation at or above the wrist, or one foot by severance or amputation at or above the ankle. (d) One dollar and fifty cents ($1.50) semiannual dues, payable on or before the 1st day of December and the 1st day of June of each year."

The policy issued to the plaintiff contained a provision binding her to pay those assessments when levied. The first paragraph of the policy, under the head of "Benefits," provides for indemnity in case of death of a member. Following that paragraph are these provisions:

"*Partial Disability.*—Said association agrees to pay to the within named member fifty cents (50 cents) for each member in good standing in this association responding to the call, should such member, while in good standing, lose one eye by removal of the eyeball from the body, one hand by severance or amputation at or above the wrist, or one foot by severance or amputation at or above the ankle, said amount not to exceed seven hundred and fifty dollars ($750), and said amount not to be deducted from the death benefit. Should such member while in good standing lose the other eye by removal of the eyeball from the body, or the other hand by severance or amputation at or above the wrist, or the other foot by severance or amputation at or above the ankle, the said association agrees to pay to said member fifty cents for each member (50 cents) in good standing in this association responding to the call, said amount not to exceed seven hundred and fifty dollars ($750). Where the within named member has waived liability upon one eye, hand, or foot, should such member, while in good standing, lose the other eye by removal of the eyeball from the body, or the other hand by severance or amputation at or above the wrist, or the other foot by severance or amputation at or above the ankle, said member shall only receive fifty cents (50 cents) from each member in good standing in this association responding to the call, said amount not to exceed seven hundred and fifty dollars ($750): Provided, that no member shall receive benefits from more than two partial disability claims, said amount not to exceed fifteen hundred dollars ($1,500).

"*Permanent Disability.*—Said association agrees to pay one dollar ($1.00) to the herein named member from each member in good standing in this association responding to the call, should such member, while in good standing, lose both eyes by removal of the eyeballs from the body, or both hands by severance or amputation at or above the wrists, or both feet by severance or amputation at or above the ankles, said amount not to exceed $1,500: Provided, however, that no member shall receive benefits for more than one permanent disability claim, said amount not to exceed fifteen hundred dollars ($1,500).

"General Provisions.

"1. All losses by partial or permanent disability herein referred to shall mean the permanent loss of the eye or eyes by removal from the body of the eyeball or eyeballs; the severance or amputation of the hand or hands at or above the wrists, and of the foot or feet at or above the ankle."

The provisions of the policy were in strict compliance with the by-laws of the associa-

tion. Upon the trial of the case the parties agreed upon the following facts:

"It is agreed by and between the parties hereto that the policy sued on herein, and attached to plaintiff's original petition, being No. 799, was duly issued to and accepted by said Effie Covington; that she has paid all dues and assessments due under said policy to date; and that said policy is now in force and effect and binding on said company, and has been in force and effect since the issuance of said policy.

"It is further agreed that said Effie Covington received an injury to her right eye some time during the month of March, 1926; that said injury has resulted in the total and permanent loss of the use of said right eye of the said Effie Covington; and that she became totally blind in said right eye on or about the 1st day of March, 1927.

"It is further agreed by and between the parties hereto that said injury to said right eye did not result in causing the removal of said eyeball from the body of said Effie Covington, nor has said eyeball been removed.

"It is agreed that this cause may be tried on the foregoing statement of facts, with the addition of the papers in evidence here following; and it is further agreed that on the 10th day of June, 1927, the membership of said defendant company was 1,402."

The trial judge filed findings of fact and conclusions of law. One of the conclusions of law reached was as follows:

"The sight of plaintiff's eye was totally destroyed by her accident, but not 'by removal of an eyeball from the body,' the contingency has not happened upon which defendant company would be liable, and that, therefore, the plaintiff cannot recover."

The controlling question in the case was whether or not plaintiff could recover, in the absence of a removal of the eyeball from its socket, according to the literal and specific stipulation in the policy. We have reached the conclusion that that question should be answered in the affirmative.

The case has been extensively briefed, with many citations of authorities. The two authorities specially relied on by appellee are Eminent Household of Columbian Woodmen v. Hancock, 174 S. W. 657, by the Texarkana Court of Civil Appeals, and Newman v. Standard Accident Ins. Co., 192 Mo. App. 159, 177 S. W. 803, a Missouri case. In the first case cited, the plaintiff recovered a judgment in the trial court for $500 on a policy of insurance providing for the payment of that sum for the "loss of one arm by severance at or above the wrist." The proof showed that plaintiff's arm had become entirely useless as the result of the severance of a large muscle and motor nerve during a fight with another person. Upon appeal, the judgment of the trial court was reversed, and judgment was rendered in favor of the defendant association, because plaintiff's arm had not been severed. In other words, the court held that the plaintiff was bound by the strict

8 S.W.(2d)—43½

terms of the by-laws, which became a part of the contract of insurance, and which made severance from the body one of the conditions of liability.

The decision in Newman v. Standard Accident Ins. Co., 192 Mo. App. 159, 177 S. W. 803, was of like effect. The holder of the policy, suing for the loss of the use of a thumb, was denied a recovery because the thumb had not been amputated; amputation being one of the conditions of liability of the association, according to its by-laws.

[1] Of course, the general rule of construction of insurance policies is that provisions of doubtful meaning must be construed most strongly in favor of the insured. Goddard v. East Texas Fire Ins. Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1; Hoffman v. Ætna Ins. Co., 32 N. Y. 405, 88 Am. Dec. 337, and many other authorities that might be cited.

[2] As appears from the by-laws of the association and the provisions of the policy sued on, indemnity against disability was the controlling purpose. The provision to the effect that the eye or some other member must be removed from the body before liability of the association attaches evidently was intended to protect the association against fraud, and severance of the injured member from the body was fixed as the sole method of proof of such loss. However, it would be a harsh rule indeed, and subversive of the most fundamental principles of justice, to hold that that provision would operate to defeat indemnity, when it conclusively appears that no fraud has been practiced, and therefore the purpose of the provision has been accomplished.

It is to be noted further that neither the by-laws nor the policy contains any provision specifically precluding a recovery if the injury complained of should not result in a removal of the eyeball from its socket, and in many decisions involving similar policies the absence of such a provision is referred to as indicating an understanding of the insurer that provisions relative to severance of a member from the body were not to have the effect of conditions of liability, but merely as evidentiary of loss. It could not be material to the risk that the eye should be removed from the body, if the sight should be entirely destroyed. Insurance against the loss of sight was the controlling purpose of the provision in the policy with reference to the loss of an eye, and, since it was agreed between the parties that the sight of one of plaintiff's eyes was totally destroyed, her claim against the association was clearly established. That such is the proper construction of the policy is indicated by its terms.

The loss of one eye is classed as "partial disability." That disability could have no other meaning, except the loss of sight. The loss of an eye by the removal of the eyeball from the body would be no more a disability than the loss of sight without removal of the

eyeball. Hence the substance and evident purpose and intention of those provisions of the policy was to insure against a disability resulting from the loss of the sight of an eye, and therefore the further provision that the eyeball must be removed from the body before the liability attaches must be considered as mere surplusage, since such a provision could not in any event inure to the benefit of the association, if the loss of sight in one eye is clearly established, as was done in this case by agreement of the parties referred to above.

Many authorities might be cited in support of this conclusion, such as Lord v. Am. Mutual Acc. Ass'n, 89 Wis. 19, 61 N. W. 293, 26 L. R. A. 741, 46 Am. St. Rep. 815; Fuller v. Locomotive Engineers' Ass'n, 112 Mich. 548, 81 N. W. 326, 48 L. R. A. 86, 80 Am. St. Rep. 598; Beeber v. Brotherhood of R. R. Trainmen, 75 Neb. 183, 106 N. W. 168.'

The case of Scales v. Masonic Mutual Protective Ass'n, 70 N. H. 490, 48 A. 1084, was a suit on a policy of insurance payable to the insured in the event he was sick "so as to be 'totally disabled, and absolutely, necessarily, and continuously confined to his house.'" In that case it was held that he was "entitled to such benefits where he was totally disabled by sickness, but remained in the open air much of the time, under direction of his physician, since defendant's liability depended on the disability of the insured, and not on his confinement to the house, which was merely an evidentiary fact, and not a condition precedent." To the same effect is the decision in Southern Surety Co. v. Diercks, 250 S. W. 755, by the Texarkana Court of Civil Appeals (writ of error denied), and also the decision by this court in an opinion by Chief Justice Conner in Federal Surety Co. v. Waite, 297 S. W. 312 (writ of error dismissed for want of jurisdiction), and other decisions there cited. In the case of Humphreys v. Nat. Benefit Ass'n by the Supreme Court of Pennsylvania, 139 Pa. 214, 20 A. 1047, 11 L. R. A. 564, plaintiff was allowed a recovery for the loss of one eye. The suit was upon a policy payable in case of the loss of sight of both eyes. At the time the policy was issued, plaintiff was already blind in one eye, and that fact was known to the agent of the insurance company. In that case the court said:

"It is evident the plaintiff was seeking insurance against the total and permanent loss of his sight. The company insured him against that, or it did not insure him at all, which is not to be considered. There appears to have been no fraud or concealment practiced by the plaintiff upon the company. * * * The loss of one eye to him was precisely the same as the loss of both eyes by an ordinary man. It is total blindness in either case. * * * It was the loss of sight which was insured against, and this [loss] was just as complete in the plaintiff's case as though both eyes had been lost during the life of the policy. * * * Is it reasonable that the parties did not intend the policy to cover the matter of eyesight at all? Yet this is the conclusion we must come to, if we sustain the defendant's contention. Where the terms of a policy are susceptible, without violence, of two interpretations, that construction which is most favorable to the insured, in order to indemnify him against loss sustained, should be adopted. Teutonia F. Ins. Co. v. Mund, 102 Pa. 89; Burkhard v. Travelers' Ins. Co., 102 Pa. 262 [48 Am. Rep. 205]. And in Hoffman v. Ætna Fire Ins. Co., 32 N. Y. 405 [88 Am. Dec. 337], it was held that no rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity, which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim, and cover the loss, must in preference be adopted."

[3, 4] The trial court held that the officers of the corporation named above, who were made parties defendant, were not partners as alleged in plaintiff's petition. We deem it unnecessary to determine whether or not that conclusion was correct, since, even though they were partners, the contract of insurance, which is made the basis of plaintiff's suit, not only fixes the amount of benefits to be paid to the plaintiff, but also fixes the method and only source from which that indemnity is to be realized, to wit, by assessments against the other members of the association, which plaintiff alleges numbered 1,402. Hence, even if those officers were held liable as partners, nothing more could be collected than what may be collected from the assessments provided for in the policy and by-laws. And since it does not appear that the association is possessed of any property subject to execution, but, on the contrary, it reasonably appearing that no funds are collectible, except for the purpose of paying assessments and operating expenses, and since plaintiff's suit is based upon the contract of insurance and the by-laws of the association, expressly made a part thereof, we overrule appellant's contention that she should be allowed a recovery of the statutory penalty for the defendant's failure to pay the indemnity sued for after proof was duly made, even though the statute invoked should be held applicable to this class of insurance associations, a question which therefore it is unnecessary to determine.

For the reasons noted, the judgment of the trial court is reversed, and judgment is here rendered in favor of the plaintiff against the association for the aggregate amount of 55 cents for each member in good standing in the association responding to the call, not to exceed the sum of $750. And it is further decreed that the defendant E. B. Clark, secretary of the Sextet Local Mutual Aid Associa-

tion, defendant herein, and his successors in office, shall proceed to make such assessments against said members, and when the assessments are collected they shall be paid over to plaintiff by the proper officers of the association, all in accordance with the terms of the policy and by-laws of the defendant association in such cases made and provided.