ROBERT RAY ROBINSON, Appellee, v. HAWKEYE COMMERCIAL MEN'S ASSOCIATION, Appellant.

APPEAL AND ERROR: Decisions Reviewable—Order Overruling
1   Motion to Dismiss Bill in Equity—Failure to Renew. Failure to renew, at the close of all evidence, a former motion to dismiss bill in equity, for lack of proof, works a waiver of the latter ruling, but not a waiver of the right to insist, in the Supreme

Court on appeal, that the evidence is insufficient to sustain the decree.

INSURANCE: Accident Insurance—"Injury Intentionally Inflicted" Defined. The words "*intentionally inflicted injury*," in an accident insurance policy, construed to mean "an injury *specifically intended* to cause the injury done;" and *held* that, under accident policy having such a provision, recovery could be had for the death of the insured, caused by being struck by a brick thrown by another person with intent to injure, but with no intent to kill insured.

INSURANCE: Accident Insurance—Presumption—Death from External, Visible Injury. Where death is shown to have resulted from an external, visible injury, the presumption obtains that it was accidental, and not intentionally inflicted, either by the insured or by another person.

INSURANCE: Accident Insurance—"In Any Degree" under the Influence of Intoxicating Liquors. Under a provision in an accident insurance policy that there would be no liability for an accident while insured was "*in any degree* under the influence of intoxicating liquors," it is not a defense to show that insured had been drinking to considerable extent, or that he was in *some* degree under the influence of intoxicating liquors, but it must be shown that he was intoxicated in a *substantial* degree.

INSURANCE: Accident Insurance—Affirmative Defenses—Burden on Insurer. The burden of proving affirmative defenses in the nature of an exception, relieving insurer from liability, is on the insurer.

INSURANCE: Accident Insurance—Contracts—Construction Most Favorable to Insured. A stipulation or exception to a policy of insurance emanating from the insurer is, when capable of two meanings, to be construed in favor of the insured, and the terms of such an exception are to be construed most strongly against the insurer.

TRIAL: Reception of Evidence—Continuance. Where a case of surprise was made out, by reason of the fact that defendant's witnesses from Florida testified differently than they had testified at an inquest in that state, plaintiff was properly granted a continuance, so that she could take depositions contradicting their testimony.

APPEAL AND ERROR: Trial—Continuance—Harmless Error. Ordi-
8 narily, no substantial prejudice could result from granting a
continuance; but if it did, it would be iue to reverse on the
ground of error in granting the continuance, as a remand
would have to be granted in an appeal on the equity side, and
evidence obtained during the appeal could· ɒe used on the new
trial; and a reversal will not be ordered, simply to inflict costs.

APPEAL AND ERROR: Trial—Continuance and Reopening of Case
9 Discretionary with Court. The granting of a continuance and
of a motion to reopen a case, and allowing the introduction of
additional evidence, is largely discretionary, and will not, ordi-
narily, be interfered with on appeal.

*Appeal from Delaware District Court.*—H. B. BOIES, Judge.

MARCH 20, 1919.

REHEARING DENIED JULY 2, 1919.

SUIT to compel an assessment on a certificate issued
by the defendant. Decree as prayed. Defendants appeal.
—*Affirmed.*

*Bradford & Johnson,* for appellant.

*E. B. Stiles* and *Grimm & Trewin,* for appellee.

SALINGER, J.—I. At the close of plaintiff's testimony,
the defendant moved the court to dismiss the bill of plain-
tiff on four grounds, which amount to an assertion that,
upon the evidence of the plaintiff, there is
such lack of proof as that the court is not
warranted in entering any decree other than
a dismissal; and the last ground of the
motion asserts there is no evidence that any
proof of loss was furnished the defendant.

1. APPEAL AND
ERROR: deci-
sions review-
able: order
overruling
motion to
dismiss bill in
equity: fail-
ure to renew.

The motion was not renewed at the close of all the evi-
dence. The overruling of it constitutes the first complaint
presented here.

If this motion to dismiss had been a motion to direct verdict, we could not consider an assignment complaining of its denial, if the motion was not renewed at the close of all the testimony. The underlying reason for this rule of appellate practice is that, when a party asserts that it is entitled to the judgment upon the proof made by his opponent, and, after said motion is overruled, he introduces evidence, he has waived the motion if he fails to renew it at the close of all the evidence, because it is presumed, from the failure to renew the motion, that the evidence introduced by the movent after the motion was overruled, has so changed the record as that the motion to direct, though it may have been well taken at the close of the testimony for one side, is no longer well taken, by reason of the evidence introduced after the ruling. This reasoning applies to a motion to dismiss a bill in equity, made at the close of the testimony of one party, as much as it does to a motion to direct verdict, made at that stage of the trial. This, of course, does not mean that one who moves to dismiss the bill for want of evidence may not contend in this court that all the evidence is insufficient to sustain the decree, even though he does not renew his motion to dismiss. This is but in analogy to the rule prevailing on the law side, that, though a party has waived the right to complain in this court that his motion for an instructed verdict was denied, he may urge in some manner, say by motion for new trial, that the evidence as a whole does not sustain the judgment. That the decree is not warranted by the evidence is properly raised in this record.

II. The petition alleges, generally, that assured was a member of defendant association, and during his lifetime kept and performed all his obligations to the defendant by virtue of said membership; and that, at a time stated, a piece of brick was thrown by one Weyman, which acci-

dentally struck assured on the head, and accidentally fractured his skull, and directly caused his accidental death. The essential controversy arises upon affirmative defenses interposed.

The policy provides that there shall be no liability for an injury, whether resulting in death or not, if such injury is "intentionally inflicted on a member by another person in or by reason of any altercation, brawl, or fight provoked by the member;" and it is averred that assured came to his death "from an injury intentionally inflicted upon the member by one Weyman, in or by reason of an altercation, brawl, or fight,provoked by said decedent." It follows that, though the injury was received in such altercation, etc., still there is liability, if the injury was not intentionally inflicted. It follows that failure to prove that the injury was intentionally inflicted ends further inquiry as to this defense; wherefore we address ourselves first to whether the injury was intentionally inflicted by Weyman. On that question, the authorities all seem to hold that, when found in a policy, words such as "intentionally inflicted injury" are construed to mean an injury specifically intended to cause the injury done. That is to say, though Weyman threw a brick at deceased with intent to injure him, but with no intent to kill him, then the killing was not an injury "intentionally inflicted," within the meaning of this exception; and while, against Weyman, there is the presumption that he intended the natural consequences of his act, as against the beneficiary of Robinson, no less will suffice than that Weyman intended to kill with the brick he threw. See *Utter v. Travelers' Ins. Co.*, 65 Mich. 545; *Travelers Ins. Co. v. Wyness*, 107 Ga. 584 (34 S. E. 113); *Railway O. & E. Acc. Assn. v. Drummond*, 56 Neb. 235 (76 N. W. 562); *Stevens v. Continental*

2. INSURANCE: accident insurance: "injury intentionally inflicted" defined.

*Cas. Co.,* 12 N. D. 463 (97 N. W. 862) ; *Union Acc. Co. v. Willis,* 44 Okla. 578 (145 Pac. 812).

We said, in *Allen v. Travelers Prot. Assn.,* 163 Iowa 217, at 223, that we have heretofore held, and again hold, that, where death is shown to have resulted from an ex-

3. INSURANCE: accident insurance: presumption: death from external, visible injury.

ternal, visible injury, a presumption will obtain that it was accidental, and not intentionally inflicted, either by the insured or by another person. To the same effect is *Caldwell v. Iowa St. Trav. Men's Assn.,* 156 Iowa 327, and *Stevens v. Continental Cas. Co.,* 2 N. D. 463 (97 N. W. 862). The presumption is that death was due to accident. *Jones v. United States Mut. Acc. Assn.,* 92 Iowa 652; *Stephenson v. Bankers Life Assn.,* 108 Iowa 637.

The rule is stated thus in 1 Corpus Juris 442:

"The existence of an intent on the part of the person inflicting the injury is necessary, and this intent must be to inflict the injury actually inflicted; and * * * where death ensues from the injury, it is necessary that the person inflicting the injury should have had the intent to kill."

The intent to injure or kill, on the part of the person inflicting the injury, becomes an essential part of the proof, and the infliction of the injury does not raise a presumption that it was done intentionally. *Stevens v. Continental Cas. Co.,* 12 N. D. 463 (97 N. W. 862). The case of *Union Acc. Co. v. Willis,* 44 Okla. 578 (145 Pac. 812), lends much support to the claim of the appellee. In that case, the death was due to a fracture of the skull from a fall on a hard pavement, and the falling was the result of a blow in the face. It is held the insurer was not released if the blow, and not the fatal result, was intentionally inflicted. In *Utter v. Travelers' Ins. Co.,* 65 Mich. 545, deceased was a

deserter, and killed in a bawdy house by a sheriff, and it was held that the design of the sheriff was not to kill, but to arrest, and therefore it could not be held that the death was caused by design, and the court said:

."The design intended by the terms of this policy must be the design that intended the actual result accomplished, and not the design of the act itself which resulted in the killing of one, contrary to the design of the act."

In *Richards v. Travelers Ins. Co.*, 89 Cal. 170, assured came to his death by a blow inflicted by a third person, while attempting to blackmail him. As to a clause similar to the one at bar, it was held proper to instruct that, if the death was caused by this blow, there might still be a recovery if the jury believed from the evidence that, when the blow was struck, the assailant did not mean to kill the deceased; that such provisions merely relieve from a death caused by the act of one whose design was to cause death from the act, and do not include every case where a blow not intended to kill unfortunately and undesignedly produces death. In *Railway O. & E. Acc. Assn. v. Drummond*, 56 Neb. 235 (76 N. W. 562), assured was shot by a robber. It was held that, within the meaning of the contract, his death was accidental, so far as insured was concerned, because the court found robbery, and not death, was intended. In the case at bar, the court could properly find that, while Weyman intended to inflict an injury on Robinson by throwing the brick, that Weyman had no intention to kill.

' We hold the trial court was warranted in holding that no "intentionally inflicted injury" releases the defendant from liability.

III. The policy provides there shall be no liability "for an accident while said member is in any degree under the influence of intoxicating liquor," and it is defended

4. Insurance:
accident insur-
ance: "in any
degree" under
the influence of
intoxicating
liquors.

·that, at time of the happening of the claimed injury, assured was "in some degree under the influence of intoxicating liquor." The theory of appellant seems to be that, under this part of the contract, being "in some degree under the influence of liquor" is equivalent to having imbibed intoxicating liquor at the time of injury. All that said condition effects is· that intoxication in any substantial degree will defeat recovery, although such intoxication is in no true sense complete. It is no bar to recovery that assured had been drinking to a considerable extent, if such drinking failed to produce intoxication in some substantial degree. We think the trial court was warranted in holding that the assured was not "under the influence of intoxicating liquor," in any degree. Evidence that deceased was sober when he left home with two others, that each drank from a quart bottle of whisky, of which some was left when they returned, that· deceased then drank two glasses of wine, and that he was then injured by stepping into a hole, does not show that deceased was injured while under the influence of intoxicating drink, it appearing that he was considered sober by those in company with him. *Prader v. National Mas. Acc. Assn.,* 95 Iowa 149. Such a clause does not mean under the influence of liquor whether intoxicated or not. *Standard L. & Acc. Ins. Co. v. Jones,* 94 Ala. 434 (10 So. 530). Under the influence of an intoxicant or narcotic "means such kind and degree of influence as impairs his ability to care for himself, and thus increases the probability of injury. It is equivalent to the word 'intoxication.'" *Bakalars v. Continental Cas. Co.,* 141 Wis. 43. The most we can find in *Little v. Iowa St. Trav. Men's Assn.,* 154 Iowa 440, is that there, there *was* sufficient evidence to sustain a verdict finding that assured was in some degree under the influence of intoxicating liquors.

We hold the trial court did not err in deciding that the affirmative defense of being under the influence of liquor was not proved.

IV.   In reaching these conclusions, we have applied the rule that the burden of proving affirmative defenses in the nature of an exception which relieves it from liability is on the insurer (*Smith v. Aetna Life Ins. Co.*, 115 Iowa 217; *Vernon v. Iowa St. Trav. Men's Assn.*, 158 Iowa 597; *Railway O. & E. Acc. Assn. v. Drummond*, 56 Neb. 235 [76 N. W. 562]), and the rule that, "when a stipulation or exception found in a policy of insurance emanating from the insurers is capable of two meanings, the one is to be adopted which is most favorable to the insured" (*Utter v. Travelers Ins. Co.*, 65 Mich. 545; *Simpkins v. Hawkeye Com. Men's Assn.*, 148 Iowa 543) ; and the terms of an exception are to be construed most strongly against the insurer. *Vernon v. Iowa State Trav. Men's Assn.*, 158 Iowa 597.

5. INSURANCE: accident insurance: affirmative defenses: burden on insurer.

6. INSURANCE: accident insurance: contract: construction most favorable to insured.

V.   The two further assignments are that the court erred in granting the motion of the plaintiff for a continuance, and allowing plaintiff to reopen the case.   We are cited to Code Section 3663, which provides that a continuance shall not be granted for any cause growing out of the fault of the party applying therefor, but that, subject to the foregoing, it may be granted for any cause which satisfies the court that substantial justice will thereby be promoted.   It appears, in a motion for continuance made by plaintiff, that deceased was injured in Florida; that plaintiff served notice to take depositions of witnesses in that state;   that defendant elected to cross-examine these wit-

7. TRIAL: reception of evidence: continuance.

nesses orally, and declined to stipulate to take defendant's testimony in chief at this time or at some later time by orally examining the witnesses for defendant in Jacksonville, Florida; that, instead, defendant took the rather unusual course of bringing its witnesses to Iowa from Florida; that two of these surprised the plaintiff by giving testimony contradictory, in material matters, of the testimony these witnesses had given at the inquest, the record of which had been examined by the attorneys for the plaintiff; that there are no witnesses nearer than Jacksonville, Florida, by whom plaintiff can fully and completely show what the testimony of these two witnesses for defendant was at the inquest; and that to show this it was necessary to take the depositions of certain persons named. Over the resistance that no due diligence had been shown, the court continued the cause to the next term; and this action is now complained of. A clear case of surprise was made out,—we might say, justifiable surprise: at least, it was not negligent to be surprised. It is probably true that some of the witnesses whose deposition was taken gave cumulative testimony. But taking the deposition of any one witness necessitated the continuance, and no prejudice could possibly result because, in the time granted by the continuance, a cumulative deposition was also taken. And the granting of a continuance differs from the overruling of an application for a continuance. Ordinarily,

8. APPEAL AND ERROR: trial: continuance: harmless error.
no substantial prejudice can result from granting a continuance. But even if that were not so, it would be idle to reverse because a continuance was erroneously granted. If the reversal were grounded solely upon the granting of a continuance, a remand would be ordered, even in an appeal on the equity side. No matter how erroneous it was to grant the continuance, the evidence obtained during the continuance

period could be used on the new trial, no matter how erro-
neous it was to grant an opportunity to obtain it. It fol-
lows that such a reversal could accomplish nothing but the
infliction of costs, and we do not reverse to accomplish only
that. Probably these are the reasons for
the rule that granting of a continuance is
largely discretional and will not ordinari-
ly be interfered with on appeal.

**9. APPEAL AND ER-
ROR: trial: con-
tinuance and
reopening of
case discre-
tionary with
court.**

The remaining assignment is that it
was error to reopen the case by the decree,
and allow plaintiff to introduce additional evidence in
chief. It is again difficult to see how such a ruling could
have been prejudicial, in any event; and no serious claim
is made that it was so. And what we have said as to dis-
cretion in granting a motion for a continuance applies here,
as well.

We are of opinion that the decree must stand.—*Af-
firmed.*

LADD, C. J., EVANS, GAYNOR, and PRESTON, JJ., concur.