**Jennie Nalty, Appellee, v. Federal Casualty Company, Appellant.***

1. INSURANCE—*what is timely premium payment.* That an insurance company agent at times advanced premium payments for an insured at the proper time, because he knew insured was responsible, does not affect the fact that the premiums were promptly paid.

2. INSURANCE—*homicide as death by accidental means.* The act of a policeman on a street corner in informing men that he would like to speak to them is not followed by a result to be expected when they at once shoot him dead and such homicide is death by accidental means within the meaning of his accident insurance policy.

* Received from clerk of Appellate Court, August 8, 1927.

3. INSURANCE—*when burden of proving liability exception falls on insurer.* When a beneficiary of a policy covering death by violent, accidental means makes a prima facie case thereof, the burden is then upon the insurer to prove death was from a cause excepted in the policy.

4. INSURANCE—*when trial finding of unintentional killing of insured not reversed.* In an action on an accident policy covering death by violent, unintentional means, if it appears one of two inferences may be drawn from the facts, the trial court has the right on waiver of jury to say that the killing of insured by strangers, after he as policeman asked them to speak with him, was not intentional on their part so as to exclude his beneficiary from insurance.

5. INSURANCE—*how to construe contracts of.* Contracts of insurance are strictly construed against the insurer and liberally for the insured and one capable of two equally reasonable interpretations will be construed under the one which will enable the insured to recover.

6. INSURANCE—*which of two conflicting policy clauses adopted.* The one of two conflicting clauses in an insurance policy will be adopted which will afford the most protection to the insured.

7. INSURANCE—*clause insuring death from shooting as excluding intentional killing exception.* An accident insurance policy which in plain type covers death by gunshot wounds is to be construed as thereby excluding an exception in favor of the insurer in fine type that the insurance should not cover death by another's intentionally killing insured.

Appeal by defendant from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed March 10, 1924.

WARNOCK, WILLIAMSON & BURROUGHS and KRAMER, KRAMER & CAMPBELL, for appellant.

M. R. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellant, on November 29, 1912, issued an accident policy of insurance to Pat J. Nalty. It contained a provision that in case of his death by accident, appellee, who was his wife, should be the beneficiary. By the terms of the policy appellant agreed that if the insured received bodily injuries effected through exter-

nal, violent and accidental means and death resulted
solely from such injuries within 90 days from date of
accident, it would pay appellee $1,000. It also provided
that for each consecutive month immediately preced-
ing the date of the accident that the policy shall have
been maintained in continuous force, one per cent of
the original principal sum of this policy shall be added
to the benefit provided for loss of life, but the total of
such additions shall never exceed 60 per cent of such
original sum.

Appellee filed her declaration to the March term,
1923, of the circuit court, in which she averred that
appellant issued the policy on November 29, 1912; that
the insured paid all premiums thereon from that date
until his death and kept the policy in continuous force
during all of that time; that on July 22, 1922, the in-
sured lost his life; that his death resulted directly and
independently of all other causes from bodily injury
effected through external, violent and accidental
means; that deceased kept, performed and complied
with all of the terms and conditions of the policy, a
copy of which was set out *in haec verba;* that by rea-
son of the premises the appellant became liable to pay
appellee the sum of $1,600. Appellant pleaded the
general issue and three special pleas. The first spe-
cial plea averred that the insured's death did not re-
sult directly and independently of all other causes
from bodily injuries effected through external, violent
and accidental means. The second set out the pro-
vision of paragraph (M) of the policy, in substance
as follows: "In the event of death, * * *, due
wholly or in part to, or resulting directly or indirectly
from, injuries intentionally inflicted upon the assured
by himself or by any other person;. * * *, —then in
any such case referred to in this paragraph, the limit
of the company's liability shall be twenty per cent of
the amount which would otherwise be payable under
this policy." It then avers that the death of insured

resulted from injuries intentionally inflicted upon him by another person and that the limit of appellant's liability, if any liability otherwise exists, is 20 per cent of the amount, if any, which would otherwise be payable under the policy. The third special plea avers that the policy was not kept in continuous force from the date of its issue until the death of the insured and that, in any event, there was nothing due under the 60 per cent accumulation clause of the policy.

A demurrer was interposed to the special pleas and sustained on the ground that they amounted to the general issue. A jury was waived and on a trial before the court the matters set up in the special pleas were relied upon as a defense to the action. The court found the issues in favor of appellee and assessed her damages at $1,600 and entered judgment for that amount.

The contention that the insured did not keep the policy in continuous force and that, in any event, appellee is not entitled to anything under the accumulation clause is not supported by the evidence. On the contrary the undisputed evidence is that the monthly premiums were paid promptly to appellant. It may be that in some instances the insured did not actually pay the agent within the specified time, but the agent testified that he knew that the insured was responsible and that he advanced the premiums for him and that he promptly paid the same to appellant even though he had not yet collected from the insured. If appellant is otherwise liable it is also liable for 60 per cent of the amount of the policy under the accumulation clause.

The assured lost his life at the Newman Hotel corner in Granite City. The hotel is on the east side of 19th street on one of the corners of the intersection of that street with C street. The latter street runs east and west and intersects 19th at right angles. At the time of the accident appellee lived with her husband on the second floor on one of the corners of this street inter-

section cater-cornered from the hotel. But two witnesses testified to the circumstances of the shooting, appellee in her own behalf and Ross Johnson on the part of appellant. The insured and said Johnson were police officers in Granite City. Appellee says that soon after midnight on July 21, 1922, she was standing at her window looking down on the street to see if her husband was coming and that she saw him at the hotel corner; that while she was looking at him three men came out of the hotel and as he advanced toward them they began shooting from both hands; that other people were on the corner besides Mr. Johnson and her husband; that the men who did the shooting were facing the people on the corner and shooting at them or in that direction. She says that her husband had no gun in his hand before or after the shooting began; that he was shot three times before he fell and was not shot after he fell and that so far as she knew her husband was not acquainted with the men who did the shooting.

Mr. Johnson says he was on duty that night and shortly after midnight was talking to the insured on the hotel corner; that he (the witness) examined a strange car that was standing there and took the number of the Missouri license and the insured said he would call St. Louis and find out who owned the car; that about that time these men came out of the hotel and as they passed the witness and the deceased the latter said to them: "Oh, just a minute, I would like to speak to you." He says that at that instant a man stepped behind him (the witness) and shot him saying: "You will arrest us, you son of a b———." Mr. Johnson says that he was shot first and that the men then began shooting at the deceased and continued to do so after he was down. He did not notice any other people on the corner at the time of the shooting.

It is evident that the death of the insured was produced by external and violent means. Was it effected

through accidental means? We are of the opinion that his act of speaking to the men who did the shooting was attended with an unusual and unexpected result,—one which could not have been reasonably anticipated and which he did not intend to produce; that is, it was not the natural or probable consequent of his act, and was not the result of design but was produced unexpectedly and by chance. That being true, the injury was caused by accidental means within the meaning of the policy. *Robison v. United States Health & Accident Ins. Co.,* 192 Ill. App. 475–477; *Hutton v. States Accident Ins. Co.,* 267 Ill. 267; *Higgins v. Midland Casualty Co.,* 281 Ill. 431; 4 Cooley, Briefs on Ins. pp. 3156–3160; Elliott, Ins. ¶¶ 391–392. An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce, and cannot be charged with the design of producing, is produced by accidental means. *Western Commercial Travelers' Ass'n v. Smith,* 85 Fed. 401, 40 L. R. A. 653; *Lickleider v. Iowa State Traveling Men's Ass'n,* 184 Iowa 423, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295. The policy expressly provides that: "It also covers all bodily injuries caused solely by accidental means, such as: * * * gunshot wounds * * *." Injury and death from such wounds are clearly recognized as resulting from "accidental means." It is quite apparent, therefore, that the death of the insured resulted directly and independently of all other causes from bodily injuries effected through external, violent and accidental means.

When appellee made a prima facie case of death from external, violent and accidental means the burden was then upon appellant to show that the death resulted from an excepted cause. 14 R. C. L. 1437; *General Accident, Fire & Life Assur. Corp. v. Hymes,* 77 Okla. 20, 185 Pac. 1085, 8 A. L. R. 318; *Lickleider v. Iowa State Traveling Men's Ass'n,* 184 Iowa 423, 166

N. W. 363, 168 N. W. 884, 3 A. L. R. 1295; *Union Accident Co. v. Willis*, 44 Okla. 578, 145 Pac. 812, L. R. A. 1915 D 358; *Robinson v. Hawkeye Commercial Men's Ass'n*, 186 Iowa 759, 171 N. W. 118.

What is the meaning of the provision of paragraph (M) in the policy, that: "In the event of death, * * *, due wholly or in part to, or resulting directly or indirectly from, injuries intentionally inflicted upon the assured by himself or by any other person?" If the slayers of the insured were on trial for murder and it appeared that they shot into a crowd of persons on the street under the circumstances disclosed by this record, they would be held, and properly so, to have intended to kill and murder him without further proof of a specific intent. *Dunaway v. People*, 110 Ill. 333; *People v. Cohen*, 305 Ill. 506. We are of the opinion, however, that the parties contracted with reference to the actual intention of the slayer and not the intention which the law presumes against a wrongdoer. "The question arises under a contract by which it was stipulated that the association should not be liable on account of injuries intentionally inflicted on the assured by any other person. 'Intentional injuries' inflicted on the assured by some other person, within the meaning of this contract refers to injuries which the other person actually directed against the insured and intended to inflict upon him. The parties contracted with reference to the actual intention of the person inflicting the injury, rather than such an intention as the law presumes as against a wrongdoer. * * * In such a case if an act is shown which would naturally and reasonably result in injury to some one of several persons, it may be presumed that the author of the act intended to injure some one, but it cannot be presumed, as against any one except the author of the act, that he intended the injury for the particular person who received it." *Travelers' Pro-*

*tective Ass'n of America v. Fawcett,* 56 Ind. App. 111, 104 N. E. 991; *Union Accident Co. v. Willis,* 44 Okla. 578, 145 Pac. 812, L. R. A. 1915 D 358; *Utter v. Travelers' Ins. Co.,* 65 Mich. 545, 32 N. W. 812.

Under an accident policy providing that there shall be no liability for injury "intentionally inflicted" by another person, recovery may be had for the death of the insured caused by another who threw a brick with intent to injure but with no intent to kill the insured. *Robinson v. Hawkeye Commercial Men's Ass'n,* 186 Iowa 759, 171 N. W. 118. Where another struck the insured in the face and he fell on a hard pavement and fractured his skull, it was held that the insurer was not released if the blow, and not the fatal result, was intentionally inflicted. *Union Accident Co. v. Willis,* 44 Okla. 578, 145 Pac. 812, L. R. A. 1915 D 358. Where the insured was a deserter, and killed in a bawdy house by a sheriff, it was held that the design of the sheriff was not to kill, but to arrest, and it could not be held that the death was caused by design. *Utter v. Travelers' Ins. Co.,* 65 Mich. 545, 32 N. W. 812. Assured came to his death by a blow inflicted by a third person while attempting to blackmail him. It was held proper to instruct that if death was caused by this blow, there might still be a recovery if the jury believed from the evidence that when the blow was struck the assailant did not mean to kill the deceased; that such provisions merely relieve from a death caused by the act of one whose design was to cause death from the act, and do not include every case where a blow not intended to kill unfortunately and undesignedly produces death. *Richards v. Travelers' Ins. Co.,* 89 Cal. 170, 26 Pac. 762. In *Railway Officials' & Employes' Accident Ass'n, of Indianapolis v. Drummond,* 56 Neb. 235, it was held that within the meaning of the contract his death was accidental so far as insured was concerned, because the court found that robbery and not death was intended.

In Corpus Juris, vol. 1, p. 442, the rule in such cases is stated to be that the existence of an intent on the part of the person inflicting the injury is necessary; and this intent must be to inflict the injury actually inflicted, and be directed against the insured, and not against another or a class of individuals; and where death ensues from the injury, it is necessary that the person inflicting it should have intended to kill. In *Allen v. Travelers' Protective Ass'n of America,* 163 Iowa 217, 143 N. W. 574, the court said: "The defendant's defense rested at this point wholly upon the question of the intent of the burglar. Such intent could be ascertained only by inference from the circumstances shown. The question of intent is usually and peculiarly a jury question. Even the legal presumptions which might obtain as against the burglar would not necessarily obtain against Carmody or the beneficiary of his insurance. If the burden of proof were on the plaintiff as to such intent, a different question would be presented at this point. Inasmuch as the burden was upon the defendant, a verdict could not be directed in its favor without holding that it had proved the intent affirmatively and conclusively. It is the exceptional case where the court can properly direct a verdict in favor of the party having the burden of proof. And this is especially so where a vital fact is sought to be established only by inference from attending circumstances."

Even if all the facts are admitted or uncontradicted, nevertheless, if it appears that either one or two inferences may fairly and reasonably be deduced from those facts, there still remains a question of fact to be determined by the court where a jury is waived. In such case the finding of the trial court cannot be set aside by this court on the ground that it is not sustained by the evidence. *Mah See v. North American Acc. Ins. Co. of Chicago, Illinois,* 190 Cal. 421, 213 Pac. 42, 26 A. L. R. 123. We cannot say that the

court was not warranted in finding that appellant failed to prove that the slayers of the insured actually intended to kill him. The court could reasonably find that their real intention was to avoid arrest and incidentally to injure the officers as an aid to their escape. If the court believed the testimony of appellee in preference to that of Mr. Johnson it could very well find that shooters were firing at or toward a number of persons on the corner and that their fire was not directed especially at the insured.

In *Travelers' Protective Ass'n of America v. Fawcett,* 56 Ind. App. 111, 104 N. E. 991, a man named Hoal entered a bank for the purpose of robbing it. The large vault was open and he ordered the men in the bank to throw up their hands and enter the vault. The president, cashier and two clerks partly complied with the command and stood as closely as they could stand together near the door of the vault. Hoal then began shooting with a revolver in each hand. The first shot was fired into the ceiling. He shot promiscuously into the group of four men. He shot around the walls of the bank to the front and to the side, firing eleven shots in all. The cashier, who was the insured, was killed and the president was seriously wounded. The trial court found that the robber did not actually intend to kill the insured and rendered judgment in favor of the beneficiary and it was affirmed.

Then again, contracts of insurance are construed strictly against the insurer and liberally in favor of the insured, and where two interpretations, equally reasonable, are possible, that construction shall be adopted which will enable the beneficiary to recover. *Zeman v. North American Union,* 263 Ill. 304. And where there are conflicting clauses in the contract, the one which affords the most protection to the insured will control. *Monahan v. Fidelity Mut. Life Ins. Co.,* 242 Ill. 488.

In the first part of the policy appellant agreed that if the insured received bodily injuries through external, violent and accidental means and death resulted therefrom within 90 days from date of accident, it would pay appellee $1,000 and an additional amount under the accumulation clause. By paragraph (M) it limited its liability to one-fifth of that amount in case death resulted from injuries intentionally inflicted upon the insured by himself or any other person. In a later provision it stated, without qualification, that the policy covers "all bodily injuries caused solely by accidental means, such as: * * *, gunshot wounds, * * *, injuries inflicted by robbers or highwaymen, * * *, whether such accidents happen at home, in the store or on the street, * * *, and in all the ordinary vocations of life."

By this latter clause injuries caused by gunshot wounds and injuries inflicted by robbers or highwaymen are clearly recognized as occurring from accidental means. It seems to us that it would not be unreasonable to say that by said clause appellant intended to distinguish and remove such injuries from the class designated in paragraph (M) as "injuries intentionally inflicted." Where a contract for accident insurance contained somewhat similar provisions, the court held that a death caused by a robber was not within the clause excepting "injuries intentionally inflicted." *Allen v. Travelers' Protective Ass'n of America,* 163 Iowa 217, 143 N. W. 574, 48 L. R. A. (N. S.) 600.

Appellant herein was appellee in *Hessler v. Federal Casualty Co.,* 190 Ind. 68, 129 N. E. 325, 14 A. L. R. 1329. In the opinion in that case the arrangement of the various provisions of and indorsements on the policy are set out at some length, from which it appears that the policy is just like the one in the case at bar except as to the names of the assured and the beneficiary and the amount of the insurance. In the *Hessler* case, *supra,* the insured was killed by a robber who

entered the store where he was employed and commanded decedent to "Hold up your hands; I want your cash." While decedent was obeying the command another employee approached the robber from the rear and slightly to the left and when the robber became aware of the presence of such other employee he shot the insured who died within an hour. In that case the defendant, appellant here, claimed that under paragraph (M) its liability was limited to 20 per cent of the policy because the injury which caused the death was intentionally inflicted by the robber. The trial and Appellate Courts decided in favor of the company. The Supreme Court of Indiana held that where the meaning of a policy of insurance is ambiguous, or it is so drawn as to be fairly susceptible of different constructions, it will be construed strictly against the insurer, and that construction will be adopted which is most favorable to the insured. The court also said: "And the unequivocal statement on the back of the policy, presented in a manner to catch the eye of the insured, that 'it also covers all bodily injuries caused solely by accidental means, such as  *  *  * gunshot wounds,  *  *  *  injuries inflicted by robbers or highwaymen  *  *  *  at home, in the office, store, shop,' etc., expressly referred to in the opening lines of the policy by the expression that the insurance is 'subject to all of the provisions  *  *  *  herein contained and indorsed hereon,' forbids that a limitation which purports to reduce the amount of liability in case of 'injuries inflicted upon the insured by himself or by any other person,' hidden away in small type, in clause (M) following, without further headline, other clauses placed under the headline in capital letters of 'SIXTY PER CENT ACCUMULATION,' shall receive a construction that will defeat the recovery in this case of all but 20 per cent of the face of the policy."

"It will be observed that the enumeration on the back of the policy of what it 'also covers' does not

suggest that in this particular it is subject to any limitations or conditions that would defeat or reduce the declared liability in case of an injury caused by gunshot wounds, inflicted by robbers in the store where the insured was employed.''

In *Travelers' Ins. Co. v. Dunlap*, 160 Ill. 642, at page 647, the court said: ''A policy of insurance should not be so framed as to be susceptible of one construction in the hands of the soliciting agent, and of quite a different one in the hands of the adjuster.'' The policy in question is of that character. The insured paid his premiums for almost ten years. The conspicuous portions of the policy were calculated to cause him to believe that he had insurance in case he was shot in the performance of his duty. In our opinion the provision to the effect that the policy covers all bodily injuries caused solely by gunshot wounds should be construed as taking such cases out of the operation of paragraph (M).

For the reasons aforesaid the judgment is affirmed.

*Affirmed.*