HARRY M. CARPENTER, Appellee, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

No. 41052.

1002

FEBRUARY 9, 1932.

George C. Gorman, for appellee.

Parsons & Mills, for appellant.

KINDIG, J.—On January 20, 1920, the defendant-appellant, Iowa State Traveling Men's Association, a corporation, issued a certificate of accident insurance to Marcus Z. Farwell, 52 years of age, who then resided in Santa Rosa, California, but formerly lived at Monticello, Iowa.

The contract of insurance consisted of the aforesaid certificate, together with "the articles of incorporation and by-laws" of the appellant, and the insured's application for membership. Under the contract, the appellant insured the said Farwell, as provided by the following stipulation:

"Whenever a member in good standing of this Association shall, through external, violent and accidental means receive bodily injuries, which shall, independently and exclusively of all other causes, result, within 90 days in the death of the member, his beneficiary shall in lieu of weekly indemnity in these by-laws provided, be indemnified in the sum of $5,000."

Elizabeth C. Farwell, wife of the insured, was named as the beneficiary in the insurance contract. After the execution

of the aforesaid contract, the insured, Marcus Z. Farwell, was shot and killed at Santa Rosa, California, February 25, 1930. Thereafter the beneficiary duly assigned the above-named contract to the plaintiff-appellee Henry M. Carpenter. A demand was made upon the appellant by the appellee for the $5,000 under the insurance contract. Payment thereof, however, was refused by the appellant upon the theory that $500 only could be collected for the death of Marcus Z. Farwell under certain exceptions named in the insurance contract. These exceptions are claimed by appellant under the following provisions of that contract:

"The Association shall not be liable for death, disability or loss in excess of one-tenth (1/10) of the amounts in these by-laws provided for indemnity for any injury arising from or effected or aggravated by any of the following causes, conditions or acts, or the results therefrom, to wit: * * * injuries intentionally inflicted upon the member by another person except in the perpetration of burglary and robbery * * * or injuries resulting from the discharge of firearms .where there is no actual eyewitness to the discharge and infliction of the injury except the member himself * * *."

It is claimed by the appellant that it is liable to appellee for $500 only, because: First, the insured was intentionally shot by some unknown person, not in the perpetration of burglary or robbery; and, second, there was no eyewitness to the discharge of the firearm that killed the insured. Furthermore, it is said that there was no eyewitness to the infliction of the injury upon the insured which caused his death. Those defenses were especially pleaded as such by the appellant in its answer, and submitted to the jury by the trial court with other issues in the case. As explained in the preliminary statement, the jury found adversely to the appellant.

Complaint is now made by the appellant on two theories: First, that the district court erred in not directing the jury to find that there was no eyewitness as contemplated by the insurance contract; and, second, that the jury failed to follow the evidence when they concluded that the insured did not come to his death by "injuries intentionally inflicted upon him by another person not in the perpetration of burglary or robbery."

No other complaint is made by appellant, and, in effect, it is conceded by it that the appellee has in every respect complied with the law and the contract in giving notice, supplying proof, etc. Our attention, then, is directed to the two matters of which appellant complains.

I. Was there an eyewitness, within the contemplation of the exception named in the insurance contract? That is the first question.

When considering the evidence with reference to this proposition, it is necessary to understand that appellant had the burden of proof at this point. The general provision for insurance did not contain this exception. In other words, the stipulation relating to an actual eyewitness to the discharge of the firearm and infliction of the injury came after the aforesaid general provision at another place in the insurance contract by way of a special limitation upon the general clause. An exception of this kind is a condition subsequent, and the burden of pleading thereunder, as well as furnishing the necessary proof to sustain such pleading, rests upon the insurer. Connell v. Iowa State Traveling Men's Association, 139 Iowa 444; Allen, Trustee v. Traveler's Association, 163 Iowa 217; Ellis v. Inter-State Business Men's Accident Association, 183 Iowa 1279; Robinson v. Hawkeye Commercial Men's Association, 186 Iowa 759; Fiedler v. Iowa State Traveling Men's Association, 191 Iowa 287; Olson v. Southern Surety Co., 201 Iowa 1334. See also Dobson v. Clemens & Co., 194 Iowa 1155 (local citation, 1161). If, then, there is a conflict in the evidence, appellant would not be entitled to a directed verdict upon this issue. Appellant had the burden, therefore, not only of proving the exception by a preponderance of the evidence, but also, if it desired a directed verdict, of demonstrating that there is no substantial conflict on this proposition in the record. It is necessary, then, to review the evidence in order to ascertain whether appellant is entitled to a directed verdict because there was no eyewitness, as required by the insurance contract.

Marcus Z. Farwell was a commercial lawyer at Santa Rosa, California, and president of the Consolidated Adjustment Company, a commercial adjustment agency. On February 25, 1930, Mr. Farwell, who, as before said, was a married man, came to his home in the evening and ate dinner with his wife.

Thereafter, at about half past seven o'clock that evening, he left home on foot. When thus leaving home, Mr. Farwell said to his wife that he was going to make two business calls in another part of town, which could not be made in. the daytime.

After leaving his house, Mr. Farwell went to the home of Dan Chironi, who lived a mile or more away. Apparently Farwell remained at the Chironi house about an hour, where he was endeavoring to make a collection for a Dr. Bonar, and left there at about 8:30 o'clock in the evening. Mr. Chironi, when Mr. Farwell was leaving his home, noticed clouds which threatened rain, and the former offered to take the latter home in his automobile. This offer was refused by Mr. Farwell, who said that other collection calls were to be made before he could return home. At about 9:15 o'clock thereafter, on the same evening, Mr. and Mrs. Charles E. Schultz, residing at 700 Washington Street in Santa Rosa, heard an explosion which they thought was the back fire of an automobile. Mrs. Bertha Noyes, living in the Casa del Sol Apartments at 608 Washington Street, at about 9:30 on the same evening heard the moans or calls of someone in distress; but the night was dark, a mist was falling, and she could not see the person calling. Immediately, Mrs. Noyes called occupants of other apartments, and finally she, Mr. Grady, and Mr. Babcock went in the latter's car to the place where the man was calling. By turning on the automobile lights, the occupants of the car could see Mr. Farwell lying on the ground with his feet on the sidewalk and his body on a vacant lot, about 60 feet from the Schultz home, before mentioned.

In response to questions, Mr. Farwell replied that he had been shot. Grady, above named, called the police. When the police came, Mr. Farwell was taken across the street to a hospital, where he shortly died. At the time of his death, the insured was 62 years of age. Dr. Reiss performed a post-mortem examination and found a gun wound on the body of Mr. Farwell, caused by a .38 caliber bullet. The bullet entered Farwell's back at about the "lower level of the scapula near the middle line of the back; the exit of the bullet was in the left anterior chest at about the level of the upper border of the heart." It was found by the Doctor that the bullet entered Mr. Farwell's back "slightly to the left of the medium line and approximately at the middle of the shoulder-blade. The course of

the bullet was upward from its inception." After returning to the place where Mr. Farwell was found, the police located a revolver "of the army type" in which were both loaded and discharged shells. The identification numbers had been scratched out on, or obliterated from, the revolver.

An investigation revealed that Mr. Farwell, at the time of his death, retained his watch, money, and all other valuables. There was nothing to indicate that his clothing had been ruffled or disturbed in any way. Before his death, as previously stated, Mr. Farwell made declarations not only to the three persons who found him, but to the police as well. These witnesses do not all agree concerning what Mr. Farwell said. He appears to have stated, however: "I have been shot." When asked who did the shooting, he replied: "The kids." To another inquiry, he is said to have replied that he did not know who did the shooting; "that someone had slipped up behind him." Mr. Farwell undoubtedly was shot at the time the Schultz family thought they heard the back fire from an automobile. After being shot, Farwell lay on the vacant lot a considerable time before he was found by the three persons above named.

The inquiry here is not concerning who may have shot Farwell, but whether there was an eyewitness to the shooting. There is no claim by the appellant that Farwell committed suicide. In fact, the appellant pleads and claims to have proven that he was intentionally murdered. Has the appellant proven, then, that there was no eyewitness to the shooting, as contemplated by the insurance contract? Manifestly not.

By referring to the "kids," Mr. Farwell indicated that more than one was present when the shooting occurred. However that may be, at least the assailant was present at the time of the shooting. Under the provision of the insurance contract now being considered, the assailant himself could constitute the witness contemplated. It is not required that appellee produce a witness, nor is there a demand in the policy that appellee's right to recover thereunder be established by such witness.

■ Moreover, the insurance contract does not say that the witness must be some person other and different from the assailant himself. Of course, the various policies contain different provisions, and each contract must be determined according to its own phraseology. In the case at bar, the contract required

merely that there be an eyewitness to the discharge (of the firearm) and infliction of the injury. The only person excepted from constituting such witness is the insured himself. By excepting the insured from those capable of being such witness, the insurance contract indicates that any other person might be a witness. Obviously, then, the assailant fulfills that requirement. If that is not true, the provision named is ambiguous and subject to different meanings. This stipulation of the policy was written by appellant, and therefore, if ambiguous, must be construed against it and in favor of the appellee's right to recover under the contract. Simpkins v. Hawkeye Com. Men's Association, 148 Iowa 543, local citation, 551; Vernon v. Iowa Traveling Men's Association, 158 Iowa, 597, local citation, 607; Robinson v. Hawkeye Commercial Men's Association, (186 Iowa 759), supra, local citation, 767; Jones v. Continental Casualty Co., 189 Iowa 678; Mochel v. Iowa State Traveling Men's Association, 203 Iowa 623; Crowe v. Merchants Life & Casualty Co., 202 Iowa 43; Wahl v. Inter-State Business Men's Association, 201 Iowa 1355.

Appellant, in fact, does not argue that the assailant is not a witness under this particular provision of the contract. Consequently, under all the circumstances and conditions above enumerated, the appellant has not proven that there was no witness as provided by the policy. That being true, it has not met its necessary burden of proof, and hence not entitled to a directed verdict. As said in Kladivo v. Melberg, 210 Iowa 306, reading on page 309:

"The plaintiff is entitled to the benefit of that interpretation of his evidence and of all inferences therefrom, if reasonable, most favorable to his case; and if reasonable minds may differ as to the conclusions to be drawn from the evidence, he is, if any of such conclusions would sustain right of recovery, entitled to go to the jury. The court should not, without compelling reason, deprive the plaintiff of the right to have the jury" pass upon his case.

See also Schulte v. Ideal Food Prod. Co., 203 Iowa 676. Likewise, in the case at bar there are many facts and circumstances, as well as inferences to be fairly drawn therefrom, in-

dicating the presence of a witness as contemplated by the insurance contract.

Therefore, under the state of the record above discussed, it is apparent that the jury were justified in finding that a witness, named in the insurance contract and defined by the court in its instructions, saw the shooting. Such being true, appellant, as before said, is not entitled to a directed verdict, and the district court properly refused to grant the same.

II. Consideration must now be given to the other exception in the policy relating to the intentional infliction of the injuries "upon the" insured "by another person, except in the perpetration of burglary and robbery."

If the injuries were intentionally inflicted by another person upon the insured in the perpetration of burglary or robbery, $5,000 may be recovered by the beneficiary in the insurance contract. On the other hand, if the injuries were thus intentionally inflicted upon the insured by another person not in the perpetration of burglary or robbery, $500 is the only amount that the beneficiary may recover. Appellant declares that under the evidence it conclusively appears that the injury was inflicted upon the insured intentionally by another person, not in the perpetration of a burglary or robbery. This being true, appellant insists that the jury should have returned a verdict accordingly, because there was no evidence to the contrary. Manifestly appellant's claim at this juncture is not sustained by the record.

Here, as in the proposition discussed in Division I, the burden of proof is upon appellant. See cases above cited. In Olson v. Southern Surety Co., 201 Iowa 1334, it is said:

"The exception does not extend to all injuries inflicted by the intentional act of another. Therefore, the defendant (the insurer) does not sustain the burden of proof by proving the general fact that the injuries were so inflicted. If the perpetrator was engaged in committing or attempting to commit a robbery, the case was not within the exception. The plaintiff (the insured) sustained the burden of proof upon her by showing that death resulted from external, violent, and accidental means. If injuries were inflicted by another intentionally, but it did not appear that the perpetrator was not engaged in robbery, or

an attempt at robbery, the defendant (the insurer) had not brought itself within the exception.''

Moreover, where death results from an external and visible injury, a presumption arises that the injury was not intentionally inflicted by the insured or by another. Caldwell v. Iowa State Traveling Men's Association, 156 Iowa 327; Allen v. Travelers' Protective Association, 163 Iowa 217; Gohlke v. Hawkeye Commercial Men's Association, 198 Iowa 144; Olson v. Southern Surety Co., (201 Iowa 1334), supra.

''It may be * * * that there would be no presumption that the assailant was engaged in committing or attempting robbery.'' Olson v. Southern Surety Company (201 Iowa 1334), supra, reading on pages 1339 and 1340.

But, under the rule relating to exceptions in insurance contracts, as above explained, the burden so to prove is cast upon the appellant. Under the presumption as thus limited and the rule on exceptions in insurance contracts of this kind, as before indicated, appellant in the case at bar had the burden of proof to show that the insured was intentionally killed by the assailant, not in the perpetration of robbery or burglary. The evidence to sustain appellant's burden in this regard is in substance set forth in Division I. From that evidence, it is apparent that three different deductions can be made. These deductions are: First, That the assailant of the insured intentionally killed him, not in the perpetration of a robbery or burglary; second, that such assailant intentionally killed the insured in the perpetration of a robbery; and, third, that the assailant unintentionally killed the insured through mistaken identity. Each hypothesis appears to have as much support in the record as the other two. Perhaps all have some support in the evidence, but no one apparently has more sustentation than either of the others. At least, it is for the jury to say whether one hypothesis had more support in the record than either of the others. As said in Olson v. Southern Surety Company (201 Iowa 1334), supra:

''The court, however, is not at liberty to select one of various inferences that may be drawn from the evidence, and upon that determine the case as upon a question of law. It is

for the jury, and not the court, to determine what inference is to be deduced from the facts proven.''

Some of the circumstances indicate that the assailant, or assailants, of the insured may have been attempting to rob him. According to the record, the insured had lived a very moral and exemplary life. His home relations were very agreeable and harmonious. Mrs. Farwell knew of no reason why anyone should desire to take her husband's life. A thorough investigation was made by the police, and they could not ascertain from anyone a reason why an assailant should attack Mr. Farwell. Business associates said that Mr. Farwell was gentle and easy-going, and. had made no enemies in the collection business. Everyone interested in Mr. Farwell, whether as relative, friend, business associate, or public officer, failed after far-reaching investigation to find any motive for the killing. It is true that no money or other property was taken from Mr. Farwell's body, yet the intended robber may have become frightened and fired the fatal shot. After doing that, he may have thrown the revolver away while running from the scene.

Although the insured was very weak when interrogated concerning his injury, yet he did say, as before related, that the ''kids did it.'' Thus Mr. Farwell indicated that more than one made an assault upon him. Possibly, when one robber was in front, attempting to subdue Mr. Farwell, the other one fired from behind. Nothing is certain and fixed.

Again, there is much to indicate, under all the circumstances, that the shooting was the result of mistaken identity. Especially is this true when it is considered that there was no reason why an assailant should attack Mr. Farwell unless to rob him. If, then, there was no robbery, the killing would quite likely be due to mistaken identity. Many authorities have held that a killing done through mistaken identity is not intentional, but accidental, under the contemplation of an insurance contract. Newsome v. Travelers' Insurance Co. (Ga.), 85 S. E. 1035; Hutchcraft's Executor v. Travelers' Insurance Co., 8 S. W. 570 (Ky.); General Accident, Fire & Life Assurance Corporation v. Hymes (Okla.), 185 Pac. 1085; Travelers' Protective Association v. Fawcett (Ind.), 104 N. E. 991; Utter v. Travelers' Insurance Co., 32 N. W. 812 (Mich.). See Kaufmann v. Drexel,

76 N. W. 559 (Nebr.) ; Butero v. Travelers' Accident Insurance Co., 71 N. W. 811 (Wis.).

Our court, when construing an exception under an allegation that the injury was intentionally inflicted, said, in Robinson v. Hawkeye Commercial Men's Association (186 Iowa 759), supra, reading on page 763:

" * * * the authorities all seem to hold that, when found in a policy, words such as 'intentionally inflicted injury' are construed to mean an injury specifically intended to cause the injury done."

To the same effect see Olson v. Southern Surety Co. (201 Iowa 1334), supra. Therefore, if the assailant of the insured in the case at bar killed him, thinking that he was another, there would be no intentional killing within the purview of the insurance contract. In the light of the entire record, then, a court can not say as a matter of law that the evidence in favor of one of the inferences aforesaid excludes the others. A jury question consequently is presented.

"* * * the cause, nature, extent, and effect of the injuries were matters of inference for the jury to draw, and were not for the determination of the court, as conclusions of law." Olson v. Southern Surety Company, (201 Iowa 1334), supra, local citation on page 1344.

Likewise, this court declared in Allen v. Travelers Association (163 Iowa 217), supra, on page 226: "The question of intent is usually and peculiarly a jury question." This declaration was made when considering an accident insurance policy containing exceptions.

Appellant cites many cases to sustain its proposition that the jury found facts contrary to the evidence. The facts in these cases, however, can clearly be distinguished from those contained in the case at bar. As before stated, each policy must be considered according to the language therein contained. So, too, the facts in each case should be weighed according to the surrounding circumstances. When that is done, it is apparent that the facts under consideration are considerably different from those involved in the cases cited by appellant. Clearly, then, appellant has no complaint because of the rulings made .

by the court or findings made by the jury on this proposition.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.