ROZZIE BRUSH, Appellee, v. WASHINGTON NATIONAL INSURANCE COMPANY, Appellant.

No. 45625.

August 4, 1941.

Rehearing Denied November 21, 1941.

Parrish, Guthrie, Colflesh & O'Brien, for appellant.

Mills, Hewitt & Diltz and O. H. Allbee, for appellee.

Hale, J.—Plaintiff's petition stated as her cause of action that the defendant insurance company issued to Austin O. Brush, on July 1, 1939, a policy of insurance, agreeing to insure the said Brush against loss of life by accidental means, in the sum of $1,000. Attached to the petition were copies of the policy and application. The petition alleged that during the night of October 1-2, 1939, the insured met his death by accidental means, by being accidentally asphyxiated by carbon monoxide gas, which he accidentally inhaled while sitting in his parked automobile near Marshalltown; and further alleged the furnishing of proper proofs and compliance with all the conditions of the policy, and that the defendant refused to pay the claim and denied liability; and the petition asked judgment. To this petition the defendant filed a demurrer, on the ground that the facts stated did not entitle the plaintiff to the relief demanded under the terms of the policy, which are referred to as pleaded in the petition. This demurrer was overruled, and defendant electing to stand on the demurrer, judgment was entered for the amount claimed, with interest. From this order of the court the defendant appeals.

The provisions of the policy, so far as pertinent to this inquiry, are as follows:

874

"This policy provides benefits ~~for the loss of time by sick-ness, or~~ for the loss of life, limb, sight, or time by accidental means to the extent herein provided. Peerless policy. Accident. department. Washington National Insurance Company, Chicago, Illinois. A stock company. Section I. Insuring Clause. In consideration (1) of the payment of the policy fee of Five Dollars, and (2) of all the agreements and representations contained in the application herefor, * * * the Washington National Insurance Company (hereinafter called the Company), subject to all the conditions, limitations, and provisions contained herein and endorsed hereon, hereby insures Austin O. Brush * * * (1) against loss resulting solely from bodily injury effected directly and independently of all other causes through accidental means, which injury is hereinafter referred to as 'such injury'; and (2) against disability resulting from sickness (if benefits are provided in paragraphs 3 and 4 of Section II hereof), the cause of which originates after thirty days from the date of this policy * * *, which sickness is hereinafter referred to as 'such sickness'; provided, however, that this insurance shall not cover nor shall any benefits be paid for any disability or loss caused by or resulting from suicide, venereal disease, insanity, military or naval service, nor shall such insurance cover nor benefits be paid for any disability, or loss, resulting from Insured's participation in aeronautics, as a passenger or otherwise, * * *. The principal sum of this policy is $1,000.00." (It will be noticed here that the foregoing section I contains certain exceptions, such as disability or loss resulting from suicide, etc., but no exception from gas or other causes specified in section V is specifically mentioned.) "Section II. Benefits for Loss of Time. #1. Monthly Accident Benefits for Total Disability." Provides for rate of pay for such injury. Paragraph 2 refers to monthly accident benefits for partial disability. "#3. Monthly Sickness Benefits for Confining Total Disability. When 'such sickness' totally and continuously disables and confines the Insured within the house, during all of which time Insured is regularly treated therein at least once each week by a licensed physician or surgeon other than himself, the Company will pay at the rate of $ None per month for a period not exceeding twelve months, for the num-

ber of consecutive days that the Insured is so disabled, confined, and treated." Paragraph 4 of Section II provides for monthly sickness benefits for nonconfining total disability. "Section III. Specific Benefits. If 'such injury', except as otherwise provided in Section V hereof, shall totally disable the Insured and shall, within ninety days from the date of the accident, result in one of the losses specified in this Section, the Company will pay, for said loss, in lieu of all other indemnity, as follows:

For Loss By Accidental Means of:

#1. Life........................The Principal Sum * * * "
 Section IV does not relate to matters in issue herein.

"Section V. Covered and Paid As Sickness. For the purpose of avoiding any question or misunderstanding concerning the origin or cause of any disability or any loss resulting wholly or in part, directly or indirectly, in or from carbuncles, boils, felons, abscesses, ulcers, infection (external infection of any 'such injury' is construed as an accident), cancer, gas, poison, culosis, appendicitis, erysipelas, fits, vertigo, hernia, surgical operations, sunstroke, freezing, heat exhaustion, heat prostration, lame back, strains, sciatica, neuritis, lumbago, paralysis, sprained back, over-exertion, dementia, or any disability following 'such injury' which is or becomes complicated with or by disease, or any disability or loss (except drowning) where there is no wound or contusion visible to the eye, it is agreed that in every such case, said disability or loss and any claim therefor shall be classified and treated under this policy as sickness and shall be subject to the provisions, conditions and limitations governing sickness insurance as set forth herein, the original cause of such disability or loss notwithstanding."

The remaining sections are immaterial so far as this case is concerned.

There is but one assignment of error and one question to be considered. The assignment is, as stated by defendant: "The trial court erred in overruling the defendant's demurrer for, under the terms of the policy, the accidental death of the insured by asphyxiation from carbon monoxide gas accidentally inhaled, was not covered."

The controversy therefore is as to the construction of

the policy, plaintiff claiming that the death of insured is covered by the terms of the policy, and defendant by demurrer denying. The general rules as to construction have often been announced. They are concisely set out in 1 C. J. 414, Accident Insurance, sections 37 to 44. They are liberally construed as against the insured, although strictly construed as against the insurer. Where a policy insures by clear and comprehensive language against death from bodily injuries by accidental means, liability for such death will not be destroyed by language of exception, unless such exception shall be clear and free from reasonable doubt. See, Masonic Accident Ins. Co. v. Jackson, 200 Ind. 472, 164 N. E. 628, 61 A. L. R. 840. See also, to the same effect, Kirkpatrick v. Aetna Life Ins. Co., 141 Iowa 74, 117 N. W. 1111, 22 L. R. A., N. S., 1255; Simpkins v. Hawkeye Commercial Men's Assn., 148 Iowa 543, 126 N. W. 192; Matthes v. Imperial Accident Assn., 110 Iowa 222, 228, 81 N. W. 484, 486. It is the rule that where insurance contracts are ambiguous or require interpretation, or are fairly susceptible of two different constructions, the courts will adopt that construction most favorable to the insured. In general, courts give that construction to an accident policy, if the language fairly admits, as will make it of value and carry out the intention expressed therein that liability is incurred where death occurs from accidental injury. See Masonic Accident Ins. Co. v. Jackson, supra. The rules above mentioned are those announced by our own decisions. See, as to ambiguous contracts, Foster v. North American Acc. Ins. Co., 176 Iowa 399, 402, 158 N. W. 401, 402; Crowe v. Merchants Life & Casualty Co., 202 Iowa 43, 209 N. W. 406; Jones v. Continental Cas. Co., 189 Iowa 678, 179 N. W. 203, 18 A. L. R. 1329; Mochel v. Iowa St. Trav. Men's Assn., 203 Iowa 623, 626, 213 N. W. 259, 260, 51 A. L. R. 1327; Carpenter v. Iowa St. Trav. Men's Assn., 213 Iowa 1001, 240 N. W. 639. In Kascoutas v. Federal Life Ins. Co., 189 Iowa 889, 892, 179 N. W. 133, 134, it is stated: ''And here comes into action the elementary rule that, in construing such exceptions, the court will deal strictly with the insurer, who drafted the proviso, and will resolve all doubt in favor of payment.'' See also, Parker v. Iowa Mutual Tornado Assn., 220 Iowa 262, 264, 260 N. W. 844, 846, citing a large number of cases. Breen v. Great Western Acc. Ins. Co., 190 Iowa 1172,

179 N. W. 931, also states as an established rule that ambiguity in any part of the policy must operate in favor of the policy-holder.

 The foregoing are general rules of construction about which there is little dispute. Defendant's contention, however, relates more to the language of the policy. Defendant recognizes, but seeks to distinguish and avoid, the holdings of our court in Breen v. Great Western Acc. Ins. Co., supra; Kascoutas v. Federal Life Ins. Co., supra; and Kascoutas v. Federal Life Ins. Co., 193 Iowa 343, 185 N. W. 125, 22 A. L. R. 294. It bases its defense on the exception found in section V of the policy, which is heretofore set out, and upon the particular language of that section; and the exception in section III (relating to specific benefits); and the difference in the language in the policy in this case and in that in the others. It states that the Breen case and this case are distinguished on the feature in the Breen case "Covered as sickness," whereas the policy sued upon herein covers only accidental injury or death; and that the difference between the present policy and the one in the Kascoutas case is that in the Kascoutas case the exception was confined to disability, while section V of the policy sued upon herein applies to any disability or *any loss,* and that the exception in the present policy is much wider than that found in the Kascoutas case, covering both disability and loss of life.

A comparison of the Breen policy and the one in suit is in order. In the two, section I is entitled, "Insuring Clause," and so far as the language of the two clauses is concerned there is little difference. Section III of the Breen policy (corresponding to section V herein) is entitled, "Covered as Sickness," while the present policy has section V, "Covered and Paid as Sickness." There is no essential difference. In the Breen case section III refers back to section I, "Insuring Clause," by using the words, "such as defined in Section I, the insuring clause hereof." In section V the present policy does not refer to section I or attempt to link section V with section I as a limitation on section I. In the Breen policy the words of exception in section III are, "Said disability and any claim therefor shall be classified and treated as sickness and shall be subject to the provisions, conditions and limitations governing the sickness." In the

present policy, section V, part of the sentence reads as follows, "said disability or loss and any claim therefor shall be classified and treated under this policy as sickness." The distinction between the two clauses will be seen to be the use of the words, in the Breen policy, "said disability," and in the present policy, "said disability or loss." In both policies, at all other places in these sections, the words "disability and loss" are used together. The attention of the court was directed to this in the Breen case, and the supreme court says [page 1177 of 190 Iowa, page 933 of 179 N. W.] : "Stress is laid by appellee upon the use of the word 'disability' at this point, and upon the absence of the word 'loss' from conjunction therewith.

"Though we reach the conclusion that the ruling upon the demurrer was right, we do not lay controlling stress upon this particular feature of the language of the policy. The expression 'disability or loss' appears conjunctively in other places in the same paragraph, and the two words appear to be treated therein as synonymous." Justice Evans, in further discussing the argument on the demurrer in the Breen case, states : "Does the word 'loss,' used in the conjunction 'disability or loss,' refer to the *loss of time* resulting from disability, or is it used in a generic sense, to include *all* loss of every kind indemnified by the policy ? The appellant contends, in effect, for the latter construction. If the word were to be used in so broad and comprehensive a sense, why should it be conjoined with the word 'disability'? The fact that it is not used at all in this paragraph, except in conjunction with the word 'disability,' is of itself very suggestive that its use was intended in the related and restricted sense.

"The formulation of the policy, whereby it deals with the different classes of indemnity in separate *sections,* is not without significance along the same line. It will be noted that Section II states its subject as *'Specific Benefits.'* * * * As to these losses specific sums are fixed, and no account is taken of *loss of time* by reason of any resulting disability therefrom.

"Section III [which would be our section II] announces its subject as 'Benefits for Loss of Time.' " He further analyzes the policy, and states : "To say the least, the policy is capable of such a construction. We think that such is the con-

struction which a policyholder * * * would most probably put upon the policy. Ambiguity in any part of the policy must operate in favor of the policyholder.''

We cannot see that the fact that the present policy limits benefits to accidents and eliminates sickness benefits lessens the apparent ambiguity. It makes it more ambiguous than the Breen policy rather than less. The printed policy was combined, providing for accident and sickness benefits, which by striking out of the heading and use of the word ''none'' in paragraph 3 of section II eliminated the provision as to sickness. Section V was retained. Attention has been called to the exceptions provided as to accidents or accidental death found in section I, the insuring clause. No mention is made therein as to any exception from disability or loss from gas except as it may be by reference in a general way in part 2 of such insuring clause. We have here then a general provision for which by search a specific exception may be found. ''* * * wherever, in an insurance contract, the general terms of obligation to pay indemnities or benefits are sought to be limited or circumscribed by special exceptions, such provisions are universally construed most strictly against the insurer, and are not to be extended or enlarged by mere inference or uncertain implication.'' Kascoutas v. Federal Life Ins. Co., 193 Iowa 343, 346, 185 N. W. 125, 127, 22 A. L. R. 294, 297.

The ambiguity found by the court in the Breen case was also pointed out in the Kascoutas case, a policy of the same general nature as the one involved in the present controversy. In the first the decision of the district court was modified and affirmed, but the case was remanded without prejudice to amending on remand by asserting a right to recover not based on the statute relating to certificates issued by benevolent organizations. On the second appeal, the court referred to the Breen case, and its former opinion, and said [page 346 of 193 Iowa, page 127 of 185 N. W.] : ''The most which can be said for defendant's construction of the contract is that it renders the agreement ambiguous, and, as we said in the Breen case, supra, 'ambiguity in any part of the policy must operate in favor of the holder.' To the same effect is Cook v. Benefit League, 76 Minn. 382 (79 N. W. 320). It follows that, both under the rule

which requires us to adhere to the law of the case and upon the established rules governing the construction of insurance contracts, it must be held that the exception clause in the policy is not available to the appellant as a defense to the plaintiff's action."

Our examination of these recent rulings of this court, based as they are upon established principles in the interpretation of contracts such as the one at bar, convinces us that the holding of the court on.the demurrer was correct and should be and it is affirmed.—Affirmed.

MILLER, C.J., and SAGER, BLISS, GARFIELD, OLIVER, MITCHELL, and STIGER, JJ., concur.